LEWIS H. WILSON vs. AUGUSTA A. WILSON.

Suffolk. March 3, 1891. — June 27, 1891.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Adultery — Connivance — Divorce.*

A husband who does nothing to encourage his wife to commit adultery, and does not directly or indirectly throw opportunities therefor in her way, but who, suspecting her thereof, watches her and suffers her to avail herself of an opportunity which she had already arranged for without any knowledge on his part, is not guilty of connivance, even if in so doing he hopes to obtain proof which will entitle him to a divorce, and purposely refrains from warning her for that reason.

LIBEL by a husband to obtain a divorce on the ground of adultery. Trial in the Superior Court, before *Lathrop*, J., who found that the libellant was guilty of connivance, and ordered a decree to be entered dismissing the libel, and reported the case for the determination of this court. If the evidence did not warrant the finding, or if, as matter of law, the order was wrong, a new trial was to be granted; otherwise, the decree was to stand. The nature of the evidence appears in the opinion.

The case was submitted on briefs on March 8, 1891, and afterwards, in June following, was re-submitted on the same briefs to all the judges.

*W. B. Orcutt & E. J. Jenkins*, for the libellant.

*J. G. Holt*, for the libellee.

MORTON, J. This case turns on the question whether the finding of the court was correct, that the libellant was, upon the evidence, guilty of connivance.

The libellant did nothing to encourage his wife to commit adultery, and did not, directly or indirectly, throw opportunities in her way. Until the day he detected her, the report does not show that any unusual or improper acts had occurred in his presence between her and any other man. He had suspected and had watched her, but had not obtained proof of her guilt, and had not till the day he caught her had the assistance of a detective or police officer. On that day he came from his home in Dorchester, and waited, suspecting she might come to Boston also, and might leave the Dorchester street car at the corner

of Federal Street and Beach Street in Boston, which she did. She met a man by the name of Andrews, whom there is nothing to show the libellant had ever seen or heard of before, and went with him to a hotel. The libellant followed her, and after waiting in the hotel an hour, and listening ten or fifteen minutes at the door of the room where they were, burst it open and found them in bed together. He hoped she would commit adultery, so that he could get a divorce, and he gave her plenty of time so that she might do it, and did not warn her. He thought before this that she had committed adultery.

We think, as matter of law, it cannot be said, on this state of facts, that the libellant was guilty of connivance. It is true that he could have prevented his wife from committing adultery, and did not; on the contrary, he wished she would, that he might have evidence on which he could get a divorce. But he did not make, or aid in any way in making, the opportunity. He did no overt act, unless keeping still was one, which it clearly was not. It was not a case where he supposed his wife was about to commit adultery for the first time, and where it would have been his duty to give her the assistance which husband and wife are mutually expected to give to each other. It certainly cannot be held that a husband who suspects his wife of infidelity can take no means to ascertain the truth of his suspicions without being deemed guilty of connivance. "There is a manifest distinction," says the court in *Robbins* v. *Robbins*, 140 Mass. 528, 531, " between the desire and intent of a husband that his wife, whom he believes to be chaste, should commit adultery, and his desire and intent to obtain evidence against his wife, whom he believes already to have committed adultery, and to persist in her adulterous practices whenever she has opportunity." Merely suffering in a single case a wife whom he already suspects of having been guilty of adultery to avail herself to the full extent of an opportunity to indulge her adulterous disposition, which she has arranged without his knowledge, does not constitute connivance on the part of the husband, even though he hopes he may obtain proof which will entitle him to a divorce, and purposely refrains from warning her for that reason. He may properly watch his wife whom he suspects of adultery, in order to obtain proof of that fact. He may do it with the hope and purpose of getting a divorce if he obtains sufficient evidence.

He must not, however, make opportunities for her, though he may leave her free to follow opportunities which she has herself made.   He is not obliged to throw obstacles in her way, but he must not smooth her path to the adulterous bed.   2 Bish. Marriage & Divorce, (5th ed.) § 9.   *Timmings* v. *Timmings*, 3 Hagg. Eccl. 76.   *Stone* v. *Stone*, 1 Rob. Eccl. 99, 101.   *Phillips* v. *Phillips*, 10 Jur. 829.

The law does not compel a husband to remain always bound to a wife whom he suspects, and it allows him, as it does other parties who think they are being wronged, reasonable scope in their efforts to discover whether the suspected party is or is not guilty, without themselves being adjudged guilty of conniving at the crime which they are seeking to detect.   *Robbins* v. *Robbins*, 140 Mass. 528, 531.   In a libel for divorce for desertion, the willingness, or even the desire, of the deserted party to be deserted, so long as it is not expressed in conduct or acts to the other party, will not bar a divorce.   *Ford* v. *Ford*, 143 Mass. 577.   Of course, as the court says in that case, there is always the difficulty of believing that the desire or willingness did not manifest itself in conduct or acts expressive of it to the other party. But nothing of the sort appears here.

In *St. Paul* v. *St. Paul*, L. R. 1 P. & D. 739, the court held that the neglect of the husband which would justify the court in withholding a decree in his favor, under a statute which provided that the court might do so where the husband was guilty of " such wilful neglect or misconduct as . . . conduced to the adultery," must be such neglect as conduced to the wife's fall, and not neglect conducing to any particular act of adultery subsequent to her fall.

The case of *Morrison* v. *Morrison*, 136 Mass. 310, referred to by the libellee, differs from this.   In that case the husband, after he had been cautioned to watch his wife, made opportunities for her and her suspected paramour to be together alone, witnessed without objection acts of considerable familiarity between them, said nothing whatever to his wife intimating any disapproval of her conduct, and in other ways acted in such a manner as to induce the adultery for which he was watching.

In the opinion of a majority of the court, there must therefore, according to the reservation of the report, be a new trial, and it is                                        *So ordered.*