FRANK H. PETTEE, Respondent, *v.* MARY H. PETTEE, Appellant.

*Action for divorce — procurement of, or connivance at a wife's adultery — inadmissible evidence received on a trial and thereafter stricken out — explanation of evidence — adjournment during trial.*

While the law very justly condemns any act on the part of a husband, by which he voluntarily leads his wife into temptation, or in any way connives at, or procures her defilement, it does not prevent him from scrutinizing her conduct, or detecting her in her voluntary violation of the sanctity of the marriage relation.

Where the suspicions of a husband have been aroused, and he seeks to detect his wife's infidelity if it exists, and takes no steps to prevent her carrying out her manifest purpose of meeting the man whom he suspects as being, and who proves to be, her paramour, leaving her to her own volition, his acts in so doing do not amount to the procurement of or connivance at his wife's adultery under section 1758 of the Code of Civil Procedure.

Where, upon the trial of an action, the evidence of the plaintiff, inadmissible under section 831 of the Code of Civil Procedure, has been improperly taken, notwithstanding proper objection by the defendant, and has been subsequently voluntarily stricken out on motion of the plaintiff without objection, no error has been committed justifying the reversal of a judgment rendered against the defendant.

When in an action of divorce the defendant made the plaintiff her witness, and proved by him with great particularity all the facts relating to his conduct and hers, claimed by her to bear upon her charge of conspiracy and connivance on the part of the plaintiff, the plaintiff is properly allowed to explain such evidence.

The granting of an adjournment while a trial is in progress is largely a matter of discretion, and nothing short of an abuse of discretion will justify an appellate court in reversing a judgment because of the refusal of a referee to grant an adjournment during a trial.

APPEAL by the defendant, Mary H. Pettee, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Essex on the 5th day of July, 1893, upon the report of a referee granting the plaintiff an absolute divorce from the defendant, with notice of an intention to bring up for review on such appeal an order entered in said clerk's office on the 5th day of July, 1893.

*C. B. McLaughlin,* for the appellant.

*S. H. Bevins* and *Francis A. Smith,* for the respondent.

MAYHAM, P. J.:

The fact that the defendant was guilty of the adultery charged in the complaint is not apparently controverted by the appellant, and cannot, we think, under the evidence be successfully denied.

The real question, therefore, to be considered on this appeal is whether the learned referee and judge at Special Term erred in refusing to find and decide that such adultery was committed with the knowledge, privity or consent of the plaintiff, and in finding and deciding that such adultery was committed without the knowledge, privity or consent, connivance or procurement of the plaintiff.

By section 1758 of the Code of Civil Procedure it is provided as follows : " In either of the following cases the plaintiff is not entitled to a divorce, although the adultery is established :

"*First.* Where the offense was committed by the procurement or with the connivance of the plaintiff."

This branch of the case was exhaustively examined by the learned referee in a well-considered and elaborate opinion, reaching the conclusion that the plaintiff did not conspire with the co-respondent, Owens, or any other person or persons, to cause or promote the adulterous intercourse complained of, and that the adultery was not committed by the procurement or with the connivance of the plaintiff.

It is insisted by the learned counsel for the defendant that the facts as found by the referee do not justify the conclusion reached by him.

A careful analysis of the finding of fact by the referee fails to disclose anything in the employment of the co-respondent Owens by the plaintiff or in plaintiff's continuing to board him after he concluded his service ; nor can any legitimate inference adverse to the plaintiff be drawn from the sale and conveyance of his hotel property or the storing of a portion of his furniture with his mother, Mrs. Bissell, where Owens was subsequently employed and boarded and lodged. The referee finds that up to the 18th of July, 1891, the defendant had not committed adultery with Owens, but that on the thirteenth of July of that year, plaintiff was informed by Mrs. Bissell of her suspicions of improper intimacy between the defendant and Owens, and that the defendant would desire to come to Bissell's the next Saturday, and if she came and the plaintiff

would follow her, he could verify the suspicions expressed by Mrs. Bissell.

The report finds that the defendant did request permission of the plaintiff to visit Bissell's on the Saturday night referred to, and that such permission was granted, and the plaintiff then arranged with friends to assist him in watching the movements of the defendant, and thus detect her infidelity with Owens if any occurred.

It is to be observed that the evidence does not disclose, nor does the referee find, that the plaintiff took any affirmative steps to bring about a meeting between the defendant and Owens, at the time of the occurrence of the alleged adulterous intercourse. It is true that his suspicions had been aroused, and he sought to detect her infidelity if it existed, and took no steps to prevent the defendant carrying out her manifest purpose of meeting the man whom he suspected as being and who proved to be her paramour. But he left her to her own volition. This we think he had a right to do; any other rule would compel a husband to impose upon his wife undue restraint, and might often lead to the utterance of unfounded suspicions well calculated to disturb the harmony of domestic relations.

While the law very justly condemns any act on the part of the husband, by which he voluntarily leads his wife into temptation, or in any way connives at or procures her defilement, it does not prevent him from scrutinizing her conduct or detecting her in her voluntary violation of the sanctity of the marriage relation.

But it is insisted by the defendant that the learned referee erred in allowing the plaintiff in this case to be sworn, and give evidence in his own behalf, under the objection that such evidence is inadmissible under section 831 of the Code.

If this testimony had not been voluntarily stricken out on motion of the plaintiff without objection, we think it would have been error for which this judgment should be reversed.

But as all of the plaintiff's direct examination was stricken out by the court on motion of the plaintiff without objection from the defendant we think that the same is out of this case, and can, therefore, do the defendant no harm. The defendant, therefore, having made the plaintiff her own witness, and proved by him with great particularity all the facts relating to his conduct and that of the

defendant claimed by the defendant to bear upon the charge of conspiracy and connivance of the plaintiff, she cannot object to the explanations to that evidence given by the plaintiff on a redirect examination of the plaintiff.

Nor do we think the referee erred in refusing to grant an adjournment, as asked for by the defendant to procure the attendance of the witness Sibley. The granting of an adjournment while a trial is in progress is largely a matter of discretion, and nothing short of an abuse of that discretion would justify the court on appeal in reversing for such refusal.

We see no error committed by the referee in his findings of fact, conclusions of law or rulings upon the trial for which this judgment should be reversed.

PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs.