# BATEMAN *v.* BATEMAN.

---

### DIVORCE; ADULTERY; CONNIVANCE.

1. Evidence in a suit for divorce held sufficient to show that the defendant committed adultery.

2. The foundation principle underlying connivance, and essential to its establishment in a suit for divorce, is that the plaintiff must have consented, either expressly or impliedly, to the adultery. It is not necessary that such consent should be known to the defendant, but before connivance can be established it must appear from the circumstances of the case that the plaintiff was willing that the defendant should commit adultery.

3. A husband does not so connive at his wife's adultery as to preclude a divorce in his favor, by falsely informing her and the corespondent that he is going out of town, asking the corespondent to call in and see that she is taken care of, and employing an attorney and a detective to watch her, where he does no affirmative act to lead her into the trap, it not appearing that the corespondent informed her of her husband's request that he call.

No. 2618. Submitted March 3, 1914. Decided May 4, 1914.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia refusing him a divorce.                                                      *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellant, Clarence A. Bateman, filed a bill in the supreme court of the District of Columbia for divorce from appellee, Evangeline L. Bateman, hereafter called defendant, and for the custody of their two minor children. It is alleged by plaintiff that he and defendant were married on July 23, 1903; that two children were born to them, and that he continued to live with her until May 7, 1913.

The bill, among other things, charges that on the 8th and 9th of May, 1913, defendant committed adultery with appellee, Frederick H. Maskew, hereafter referred to as the corespondent, at apartment No. 10, in the Grenada Apartment House, 1433 T street, Northwest, in the city of Washington. It is further alleged that the act of adultery was without the connivance of plaintiff. Defendant and corespondent filed a general denial.

The conduct of defendant and corespondent, as disclosed by the record, was such as to justly arouse the suspicion of plaintiff that improper relations existed between them. He accordingly employed an attorney, and, by his advice, secured the services of a detective to investigate the conduct of defendant and the corespondent. He then notified defendant that he was going to New York on business, to be gone for two or three days. Instead of going to New York, he went to Baltimore, Maryland, and arranged to keep himself in telephone communication with his attorney.

It appears that the detective, with an assistant, traced defendant and the corespondent to Poli's theater on the night of May 5th; that they came out of the theater at about 11:40 P. M., and together boarded a Fourteenth street car. Corespondent left the car at S street, and defendant got off at T street, where she was joined by the corespondent, who, after talking with her for a few minutes, kissed her, and they separated. Detectives

also testified that corespondent was in the vicinity of the apartment house on the nights of the 6th and 7th of May, but that they did not see defendant.

Plaintiff left Washington on May 7th, having told his wife that he was going to New York. On the evening of May 8th, defendant left the apartment house with the two children about 5:45 o'clock, met a gentleman on the street, and went to lunch with him, came out of the lunch room and met another man, with whom she conversed for a few minutes, and about 7:45 P. M. met the corespondent, and went with him to the Cosmos Theater, where they remained until between 9 and 10 o'clock. The detectives testified that, on leaving the theater, they proceeded to the apartment house, where they arrived about 10:10 P. M. The corespondent remained in the apartment, according to the testimony of the detectives and the attorney, until about 1:20 A. M.

*Mr. Ethelbert B. Frey* and *Mr. Edward L. Gies* for the appellant.

*Mr. William E. Ambrose, Mr. Charles D. Westcott,* and *Mr. Leonard A. Block* for the appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is unnecessary to detail what the detectives testified they saw taking place between defendant and the corespondent during the time he remained with her in the apartment. His mere presence there at the hour of the night, in connection with the general compromising relations of the two, as detailed in the record, would be sufficient. The commission of the act of adultery is so conclusively proved as to admit of no reasonable doubt.

But it is urged by way of defense that, admitting the truth of the charge, plaintiff so connived at the commission of the act as to forbid his right to be heard in a court of equity. Corespondent testified that he met plaintiff before he left the city, and the following conversation occurred: "Mr. Bateman stood

there and talked with witness and said, 'I have not seen you around lately.' Witness stated 'I have not been around.' Mr. Bateman said, 'what is the matter?' Witness stated, 'I have not been feeling very well,' or something to that effect. Witness stated that he told Mr. Bateman the circus was going to be in town Monday, and he would like to take the children to the circus if agreeable. Mr. Bateman said that he was going to take them himself, and then mentioned the fact that he expected to go to New York Wednesday or Thursday of the next week. That he expected to get other employment up there that would benefit him more than his place here. Witness congratulated him that he should do so well in business. He said he was scared about Eva since a man had tried to break into Mrs. Bateman's apartment. Witness further said that Mr. Bateman said, 'Suppose you take the children sometime next week?' That was the arrangement that I could take the children next week, and he said, 'You might look around and see that my wife is taken care of properly. She is very much afraid. She wants the doors locked and bolted, she is nervous.' " It appears that corespondent had, on occasions before this, taken the children out to walk.

That this conversation occurred is denied by plaintiff, but we do not regard it as important. Conceding its truth, with the additional fact that plaintiff employed an attorney and a detective to investigate and watch the conduct of his wife, and purposely deceived his wife by leading her to believe that he was going to New York, it does not, in law, amount to connivance. The foundation principle underlying connivance, and essential to its establishment here, is that plaintiff must have consented, either expressly or impliedly, to the adultery. It is not necessary that such consent should be known to defendant, but before connivance can be established it must appear from the circumstances of the case that plaintiff was willing that defendant should commit adultery. A wide distinction exists between the desire of the husband that his wife, in whose chastity he has faith, should commit adultery, and his efforts to secure evidence against her if he has reason to believe that she has been guilty

of acts of adultery, and will commit the act again if the oppor-
tunity is afforded. In the latter case, it is not connivance to
deceive his wife as to his whereabouts, or to employ counsel and
detectives to assist him in procuring evidence of her infamy.

Neither was plaintiff, when his suspicions were aroused, re-
quired to watch his wife constantly and control her actions.
"Undoubtedly husband and wife ought mutually to aid each
other in doing right, and to guard each other from doing wrong.
But the legal duty of the husband to control the conduct of
his wife cannot be greater than his legal right; and, by modern
law and usage, the right of a husband to control the conduct
of his wife has largely, if not wholly, disappeared. A husband
cannot imprison his wife in order to protect her against seduc-
tion, nor is he compelled always to attend her, or to remain at
home with her. A chaste husband ought, if he desires it, to
have a wife who will remain chaste when exposed to the temp-
tations which are incident to the ordinary conditions of modern
social life; and, if she commits adultery against his wishes,
and without his procurement, he ought to be permitted to obtain
evidence of it." *Robbins* v. *Robbins,* 140 Mass. 528, 531, 54
Am. Rep. 488, 5 N. E. 837.

True, plaintiff, as we have suggested, upon well-grounded sus-
picions, set a trap for defendant. But he did no affirmative act
which induced her to step into it. She was in no way induced
by anything plaintiff did to meet the corespondent by appoint-
ment on the street, to accompany him to the theater, to admit
him to her apartment, and to permit him to remain there until
after the midnight hour. Nothing that plaintiff did could have
led to anything even reflecting upon the chastity of defendant
had she not contributed to produce the compromising situations
with the corespondent. It does not appear that the corespond-
ent communicated to defendant the alleged conversation with
plaintiff. She cannot, therefore, rely upon that fact as an in-
ducement for admitting him to the apartment. She was free,
without the existence of a single circumstance, to conduct her-
self as a pure woman and a dutiful wife, regardless of what
her husband had told the corespondent or the deception prac-

tised by plaintiff as to his whereabouts. No opportunity was thrown in her way by the husband. The alleged conversation between plaintiff and the corespondent created no opportunity, had not defendant voluntarily permitted the corespondent to carry out his designs. She created the opportunity. Under circumstances of this sort it is well settled that there is no such connivance as to justify the refusal of a divorce. *Wilson v. Wilson,* 154 Mass. 194, 12 L.R.A. 524, 26 Am. St. Rep. 237, 28 N. E. 167; *Pettee* v. *Pettee,* 77 Hun, 595, 28 N. Y. Supp. 1067.

The decree is reversed, with costs, and the cause is remanded with instructions to grant plaintiff a decree of divorce, with the custody of the minor children, and a judgment against the corespondent for the costs incurred by plaintiff, both in this court and the court below.                    *Reversed* and *remanded.*