## GARMAN v. GARMAN.
### No. 7072.

United States Court of Appeals for the District of Columbia.

Decided Jan. 30, 1939.

EDGERTON, Associate Justice, dissenting.

———◇———

Hewitt Griggs Robertson and Edward C. Kriz, both of Washington, D. C., for appellant.

No appearance for appellee.

Before GRONER, Chief Justice, and STEPHENS and EDGERTON, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a final decree dismissing a bill and cross-bill in a divorce suit. The appellant, the husband and plaintiff below, and appellee, the wife and defendant below, each sought a divorce from the other, the appellant upon the ground of adultery, the appellee upon the ground of cruelty. It appears from the pleadings and evidence that the parties were married in Maryland on October 18, 1924, but that since that time they have resided continuously in the District of Columbia. On May 16, 1934, they were granted a "Mexican divorce" which they joined in obtaining, apparently by "mail order," when both were in the District of Columbia and, so far as the record discloses, without any representation that they were otherwise domiciled. It appears also that prior to the date of the Mexican decree the parties had entered into a separation agreement which, among other things, provided:

"That it shall be lawful for each of the said parties to live separate and apart from the other and to reside from time to time at such place or places and with such

---

[4] Certiorari denied 273 U.S. 734, 47 S.Ct. 243, 71 L.Ed. 865.

person or persons as either party may see fit, without any restraint or interference from the other, in all respects as if such party were unmarried."

At the trial below there was evidence tending to prove that the appellee, after the separation agreement and the "Mexican divorce" and after she had been advised that the Mexican decree was void, had been guilty of adultery. There was also testimony tending to refute this. For the purpose only of discussing the questions of law presented in the case, we shall assume that there was adultery on the part of the wife. The trial court made no decision on this subject, and we make none. No testimony was introduced by the appellee in support of the cross-bill charge of cruelty. In this state of the pleadings and evidence, the trial judge, without making findings of fact, rendered a memorandum opinion, as follows:

"I find that the Mexican divorce was obtained with the co-operation and consent of both parties and on the authority of Curry v. Curry, 65 App.D.C. 47 [79 F.2d 172] both the original and cross-bills should be dismissed.

"In addition inasmuch as the husband joined in obtaining the Mexican divorce, and expressly under the contract entered into between the parties agreed that the wife might live with whomsoever she pleased, he consented to any illicit intercourse that she might thereafter enter into."

Thereafter, the decree of dismissal was entered.

We think that the trial court erred: 1. In respect of the effect of Curry v. Curry, 1935, 65 App.D.C. 47, 79 F.2d 172. In that case a husband and wife had entered into a separation agreement whereunder the husband was to pay monthly sums to the wife. Later, a decree of divorce was obtained by the wife in Nevada, she being personally present in the Nevada court and the husband having entered appearance. Shortly after this, the husband remarried. Then the wife, finding herself penniless and unable to obtain satisfaction of a judgment which she had obtained against the husband upon the separation agreement, sought a decree of divorce in the District of Columbia upon the theory that she had been coerced into the divorce (of the alleged coercion we found no evidence) and upon the theory further that the Nevada decree was invalid because

of fraud practiced upon the Nevada court in asserting domicile within the jurisdiction of that court. We held that she could not obtain a divorce in the District, saying, among other things (65 App.D.C. 47, at page 49, 79 F.2d 172, at page 174):

"Where a party litigant has invoked the jurisdiction of a court, and the other party has voluntarily appeared and submitted thereto, it is not consonant with ordinary conceptions of justice for another court to countenance an attempt to repudiate that jurisdiction, particularly when such attempt involves considerable sums of money expended, and the unsettlement of domestic relations created under color of the judgment. [Citing authorities]

". . . it can never lie with a litigant either by passive consent, or by affirmative action, to lead a court to find a fact justified and fit to be carried into judgment, and then to contend in another court that the same fact at the same time and within his own knowledge, was otherwise and competent to support a contrary judgment.

"For a consent decree, within the purview of the pleadings and the scope of the issues, is valid and binding upon all parties consenting, open neither to direct appeal nor collateral attack. 'A fortiori, neither party can deny its effect as a bar of a subsequent suit on any claim included in the decree.' . . .

"A statement in a record on appeal that a party has consented to a decree is equivalent to an admission that the facts exist on which the decree rests, and the only question open is whether that decree could be entered in that cause on any state of facts. . . ."

The theory of the decision in Curry v. Curry was that the party plaintiff there, having invoked the jurisdiction of a foreign court upon the basis of jurisdictional facts asserted in that court to be true, could not in a second suit be heard to say that they were untrue, to the unsettlement of domestic relations created under color of the first decree, and that on the facts asserted in the Nevada court its decree was valid, and therefore could not be repudiated or collaterally attacked by the person obtaining it. Curry v. Curry is thus distinguishable from the instant case in that it does not appear herein that there was any misrepresentation of jurisdictional facts to the Mexican court; and it does appear that the Mex-

ican decree was void because neither of the parties was domiciled in Mexico nor personally present there. And there is not in the instant case a basis for a claim by the wife that it is inequitable for the husband to assert, as against her, the invalidity of the Mexican decree, for even if the wife believed that the Mexican decree was valid (and there is some evidence that she was advised that it was void) there is no such inequity or hardship in permitting the husband here to repudiate the foreign decree as there would have been in permitting the wife to do so in Curry v. Curry. In the latter case the husband, after the Nevada decree, entered into a marriage, a relationship which has the countenance of both law and morals, whereas in the instant case, even if the wife believed that the Mexican decree was valid, she entered into no such relationship. To deny the appellant in the instant case, because of the Mexican decree, a right to proceed for divorce locally, would be to give effect to that which, it appears, was wholly void; and this we ought not do. Cf. Kegley v. Kegley, 1936, 16 Cal.App.2d 216, 60 P.2d 482; Golden v. Golden, 1937, 41 N.M. 356, 68 P.2d 928. Neither law nor equitable considerations nor public policy requires that the court compel the husband to continue bound to the wife in the circumstances of this case.

■■■ 2. In respect of the ruling of the trial court that by the separation agreement the appellant barred himself from any right of divorce on the ground of adultery by consenting thereto. The law is settled that separation agreements do not *per se* operate as a consent to adultery and consequently a bar to divorce. Franklin v. Franklin, 1891, 154 Mass. 515, 28 N. E. 681, 13 L.R.A. 843, 26 Am.St.Rep. 266. In that case, as in the instant case, an agreement of separation was set up in defense of a divorce suit on the ground of adultery. The court held that it was ineffective as a defense, saying:

"Living apart by agreement is no bar to a suit for divorce brought by either against the other on the ground of adultery. A voluntary separation is not a license to commit adultery; and it has uniformly been held that, in case of adultery under such circumstances, the innocent party may have a remedy against the other in a suit for a divorce. [Citing authorities] . . . " [154 Mass. 515, at pages 516, 517, 28 N.E. 681, at page 682]

And see Ross v. Ross, [1869] L.R. 1 P. & D. 734. See also 2 Bishop, Marriage, Divorce, and Separation (1891) § 243, pp. 125–6, where the author says:

"The usual covenants that the wife may dwell where and in such manner as she pleases and be free from the restraint of her husband, that he will not bring against her a suit for the restitution of conjugal rights, and others of like import, will not be construed as a consent to her living in adultery. And if doubtful words admit of a construction favorable to innocence, it will be given them, rather than the other. . . ."

See also 2 Schouler, Marriage, Divorce, Separation and Domestic Relations (6th ed. 1921) § 1310, p. 1558, to the effect that:

"There is a general opinion, founded in sound policy, that articles of separation are no bar to proceedings for divorce for subsequent cause, as if one of the parties, after their execution, should commit adultery. . . ."

An agreement of separation substantially identical in terms with that in the instant case has been held not to constitute a consent to adultery. Barker v. Barker, 2 Add. 285, 162 Eng.Rep. 298. We think likewise that the separation agreement in the instant case does not, either in terms or by implication, constitute a consent by the husband to adultery by his wife.

The decree of the trial court is therefore

Reversed and the case remanded for further proceedings in accordance with this opinion.

EDGERTON, Associate Justice (dissenting).

Whether or not the present parties misrepresented facts to the Mexican court, I think that here as in the Curry case the "condition of which the plaintiff complains was brought about by" the plaintiff's "collusion, connivance, and active cooperation". 65 App.D.C. 47, 49, 79 F.2d 172.

It has been held that a husband or wife who assists in obtaining a foreign divorce which is invalid connives at his spouse's subsequent adultery in marrying and living with another, and cannot use that adultery as a ground for divorce. Langewald v. Langewald, 234 Mass. 269, 125 N.E. 566, 39 A.L.R. 674; Lankester v. Lankester, L. R. [1925] P. 114; Palmer v. Palmer, 1 Sw. & Tr. 551; cf. Curry v. Curry, supra, Contra, Shannon v. Shannon, 247 App.Div.

790, 286 N.Y.S. 27 (two judges dissenting). In similar circumstances, it has been held that the plaintiff is estopped from claiming a declaratory judgment that the marriage which she undertook to end is still in effect. Schneider v. Schneider, 232 App.Div. 71, 249 N.Y.S. 131. Cf. Starbuck v. Starbuck, 173 N.Y. 503, 66 N.E. 193, 93 Am.St.Rep. 631. Similarly a husband who divorces his wife by a Jewish "get", which is not a legal divorce, connives at her adultery in marrying another. Shilman v. Shilman, 105 Misc. 461, 174 N.Y.S. 385, affirmed 188 App.Div. 908, 175 N.Y.S. 681, affirmed, 230 N.Y. 554, 130 N.E. 890. No Mexican decree can be more void than a "get"; and no party to a Mexican decree can be more innocent of misrepresenting facts to a court than the parties to a "get," who do not go near a court.

Although the wife in the present case did not remarry, I think the husband cannot fairly assert against her the invalidity of the Mexican decree. As far as appears, the wife's faith in the Mexican decree may have persisted as long as the asserted relationship with the co-respondent. That being so, I think the husband is estopped to complain of the relationship. One who cooperates in procuring his own divorce, valid or invalid, plainly represents that his wife is freed from all marital obligations to him and that he will not in the future demand marital conduct from her. Defendant's non-marital conduct occurred after, and for all we know in reliance on, plaintiff's representation. Until she learned that the representation was untrue, it may have influenced her. We cannot assume that it was all one to the defendant whether she was a married woman, committing the crime of adultery and giving cause for divorce, or an unmarried woman committing only fornication and creating no cause of action. As plaintiff, by cooperating in the Mexican divorce, may have helped to cause the acts of which he complains, and certainly represented that he would not complain of them, he complains with bad grace and in my judgment is estopped.

I think the defense may also be put, as it was in the remarriage cases cited above, on the closely related ground of connivance. It is said that consent is necessary to connivance. Bateman v. Bateman, 42 App.D.C. 230. But when a husband's conduct plainly indicates to his wife that he will not object to sexual relations·between her and third persons, he is regularly held to connive at those relations. In connection with connivance as in most other situations, it is apparent or objective consent with which the law is concerned.

The case has another aspect. I think the statute permitting divorce for adultery should be interpreted as contemplating conscious adultery. Unconscious adultery offers far less affront to the feelings of the husband and the standards of society. As the defendant believed herself an unmarried woman, she was no more a conscious adulteress than if she had been asleep or drugged.

I think the decree appealed from should be affirmed.