**Randolph Powell BUTLER, Appellant,**

v.

**Elizabeth Burrows BUTLER, Appellee.**

**No. 4218.**

District of Columbia Court of Appeals.

Argued Nov. 6, 1967.

Decided March 15, 1968.

Sol M. Alpher, Washington, D. C., with whom Maurice Friedman, Washington, D. C., was on the brief, for appellant.

Michael A. Schuchat, Washington, D. C., with whom Milton M. Gottesman, Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

KELLY, Associate Judge:

It is claimed in this appeal from a judgment of separate maintenance that the trial court awarded excessive maintenance and counsel fees and erred in denying appellant's counterclaim for divorce on the ground of voluntary separation, in refusing to give full faith and credit to appellant's Mexican divorce decree, and in failing to make written findings of fact and conclusions of law. We consider these claims in inverse order and affirm.

---

1. Cf. Ridgely v. Ridgely, D.C.App., 188 A.2d 296 (1963); Keller v. Keller, D.C. Mun.App., 171 A.2d 511 (1961).

Rule 7 of the Domestic Relations Branch states:

> In all actions tried in the Domestic Relations Branch the court shall make written findings of fact and conclusions of law. The findings, conclusions and the judgment based thereon shall be entered on the same day.

We have said that this rule (formerly Rule 11) is no mere technicality, but is essential to the proper disposition of cases on appeal; yet reversal is not required if the record fully apprises the appellate court of the basis of the decision. Hamilton v. Hamilton, D.C.Mun.App., 158 A.2d 677, 679–680 (1960); O'Lea v. O'Lea, D.C.Mun.App., 138 A.2d 486, 487 (1958).[1] The judgment here, signed nunc pro tunc to the date of trial, contains the essential legal conclusions that the parties are validly married; that their marriage has never been dissolved; that appellant is not entitled to a divorce, and that he has failed to properly maintain and support his wife although able to do so. In addition, the trial judge made detailed oral findings from the bench, specifying in every particular the evidentiary basis for his findings and indicating wherein he questioned the credibility of witnesses.[2] Under the circumstances of this case, therefore, because there is no need to choose between conflicting inferences or to surmise the basis upon which a finding was made, this record presents no impediment to appellate review. We would add that although reversal is not required here the rule should be followed in every case since it not only places the entire factual pattern in perspective for the ensuing judgment and for appellate review, but evokes care on the part of the trial judge in ascertaining the facts.

The parties to this appeal were married at Philadelphia, Pa., in 1941 and lived abroad for many years. One child, now emancipated, was born of the marriage.

---

2. The findings cover eight pages of a transcript which is subscribed to by the trial judge.

In April 1960, by mutual agreement and primarily because of marital difficulties, there was a temporary separation with appellee returning to the United States while her husband remained in Brazil where they then resided. In October of that year appellant wrote his wife that the separation was to be permanent. Thereafter, in October 1961, with notice to appellee by service through a Deputy United States Marshal but without her consent, appellant secured a Mexican divorce and married the woman with whom he now lives in Lima, Peru. From 1960 until August 1965, when he became temporarily unemployed, appellant sent $550 per month to appellee for the support of herself and of the then minor daughter. The present action was filed May 25, 1965, first seeking maintenance and a legal separation on the ground of cruelty; then amended to seek only separate maintenance. Appellant pleaded the validity of the Mexican divorce and, failing that defense, counterclaimed for an absolute divorce on the alternative grounds of desertion and voluntary separation. The court found for appellee on all issues, awarding her maintenance of $650 per month plus attorney fees of $3,000.

In ruling upon the validity of appellant's Mexican divorce the trial judge held that the Mexican court had neither jurisdiction in rem nor in personam based on the following fairly typical set of circumstances. Appellant left his employment in South America on home leave in September 1961[3] and went to El Paso, Texas, with a view to obtaining a Mexican divorce. He made two trips into Mexico of a few hours' duration each; one to consult an attorney and register as a resident and the other, about twenty days later, to appear in court for the divorce. In the interim appellant spent his time touring parts of the West Coast. There was personal service upon appellee in the District of Columbia by a Deputy United States Marshal, but she did not appear in the Mexican court either in person or through an attorney. The decree was awarded October 11, 1961. On October 27, 1961, appellant married his present purported wife in Englewood, New Jersey.[4]

■ It should first be noted that recognition of judicial decrees of foreign countries is based upon comity and not, as the parties argue, upon full faith and credit under the Federal Constitution. Comity, in turn, does not require recognition of a foreign decree which contravenes the public policy of the jurisdiction in which recognition is sought. This court has upheld a bilateral Mexican divorce where principles of procedural due process were followed and jurisdiction of the court established. *Rosenbaum v. Rosenbaum*, D.C.App., 210 A.2d 5 (1965). On the other hand it is settled that Mexican "mail order" divorces[5] and Mexican "ex parte" divorces[6] are not recognized in this jurisdiction.

■■ We deny validity to such Mexican divorces because under our system of jurisprudence a court must have jurisdiction of the subject matter over which it purports to act, the marriage res in a divorce action, and jurisdiction over the marriage res depends upon a finding of domicile or residence[7] of at least one of the par-

---

3. Appellant resigned his job in November 1961 and received terminal pay until August 1962.

4. On his marriage application appellant listed Brazil as his permanent home. He lived in New York until May 1962 when he returned to his apartment in Brazil which he still maintained.

5. Anderson v. Anderson, 84 U.S.App.D.C. 231, 172 F.2d 280 (1949); Garman v.

Garman, 70 App.D.C. 4, 102 F.2d 272, 122 A.L.R. 1317 (1939); Sears v. Sears, D.C.Mun.App., 166 A.2d 748, 749 n. 1 (1960), rev'd on other grounds, 110 U.S. App.D.C. 407, 293 F.2d 884 (1961).

6. Hodge v. Hodge, 80 F.Supp. 379 (D.D.C. 1948).

7. The distinction between these terms has become increasingly blurred in the many opinions in this area of the law.

ties to the action within the territorial limits of the court's jurisdiction. Appellant argues that when his employment terminated in Brazil he was a man without a residence, free to go to any country and immediately establish a new residence. He claims he chose Mexico, registered as a resident, and secured a divorce valid under Mexican law. However, we think it absurd to say that under the facts of this case appellant established either a domicile or a bona fide residence in Mexico, and that it is disingenuous to argue that our courts would countenance the suggestion that there was jurisdiction of the marriage res in the Mexican court. As far as we are aware only the New York courts uphold a Mexican divorce decree based upon such supposed "residence" and then only where the responding party appeared in court through an attorney in contradistinction to a universally condemned "ex parte" Mexican divorce. Rosenstiel v. Rosenstiel, 16 N.Y.2d 64, 262 N.Y.S.2d 86, 209 N.E.2d 709, 13 A.L.R.3d 1401 (1965), cert. denied, 384 U.S. 971, 86 S.Ct. 1861, 16 L.Ed.2d 682 (1966). In this case, although she had notice of the proceedings through substituted service by the Deputy United States Marshal,[8] appellee did not appear in person or through an attorney nor was she required to do so. In sum, we think the trial court was correct in holding appellant's Mexican divorce was no defense to this action.

■ The denial of appellant's counterclaim for absolute divorce on the ground of voluntary separation has ample support in the record. The original separation was by agreement to be temporary only, and the court found that appellee did not acquiesce in her husband's later unilateral decision that the separation was to be permanent. Appellee did not see her husband from October 1960 until the time of pretrial in this case although without her knowledge he had been in the District of Columbia several times during this period. She did, until 1965, regularly receive from him the sum of $550 per month for support, but the checks were mailed to her from her husband's employer in New York and she was unaware of his whereabouts at all times.[9] While the evidence disclosed no continued effort at reconciliation, the court held that appellee was not required to do the impossible nor would equity require a useless task. It found that she was unable to communicate with her husband to make overtures for a reconciliation. It also found that after he obtained the Mexican divorce and took another wife into his home it would have been futile for her to make any such overtures toward reconciliation. In light of this evidence we agree that appellant failed to prove that silent acquiescence requisite to a divorce on the ground of voluntary separation. Boyce v. Boyce, 80 U.S.App.D.C. 355, 153 F.2d 229 (1946); Johnson v. Johnson, D.C.App., 221 A.2d 85 (1966).

■ In answer to the claim that the award of maintenance is so excessive as to amount to a penalty we note, without reciting the details of the testimony, that the trial judge clearly gave careful consideration to those primary factors which we have said form the basis of an award of alimony or maintenance, Tibbs v. Tibbs, D.C.App., 223 A.2d 279 (1966); McEachnie v. McEachnie, D.C.App., 216 A.2d 169, 170 (1966), namely:

[T]he duration of the marriage, the ages and health of the parties, their respective financial positions, both past and prospective, the wife's contribution to the family support and property ownership, the needs of the wife and the husband's ability to contribute thereto, and the in-

8. The trial court held this service ineffective and in excess of the Marshal's statutory authority to "[E]xecute all lawful writs, process and orders issued under authority of the United States, * * *." 28 U.S.C.A. 569(b).

9. Since 1960 appellant has lived in Brazil, New York, Liberia, the District of Columbia and Peru.

terest of society generally in preventing her from becoming a public charge.

Accordingly, while we may think it generous, we cannot say the determination that it was reasonable and necessary to award the wife the sum of $650 per month for her support is plainly wrong or without substantial evidence to support it. Rutherford v. Rutherford, D.C.App., 189 A.2d 124 (1963). Similarly, an award of counsel fees is within the sound discretion of the court and on the record here there is not that strong showing necessary to hold that an award of $3,000, again generous, is so arbitrary as to constitute an abuse of that discretion. Ritz v. Ritz, D.C. App., 197 A.2d 155 (1964); Keller v. Keller, D.C.Mun.App., 171 A.2d 511 (1961).

Affirmed.