[S. F. No. 14169. In Bank.—July 20, 1932.]

TERESA LOUISE DELANOY, Appellant, v. FREDERICK WILLIAM DELANOY et al., Respondents.

W. L. Albert for Appellant.

Calkins, Hagar, Hall & Linforth for Respondents.

THE COURT.—Plaintiff brought this action against the defendant Frederick William Delanoy for divorce on the grounds of desertion and extreme cruelty. The mother of the above-named defendant was joined as a party defendant because of her claim to certain real property, alleged by plaintiff to be community property. So far as pertinent here the complaint alleges that plaintiff and defendant Frederick Delanoy were married in San Francisco June 30, 1906; that the parties separated March 1, 1926; that there are two children of the marriage and that defendant husband has the control and possession of certain property alleged to be community property. Plaintiff prays for a divorce, for all the community property and for alimony.

The defendant Frederick Delanoy answered the complaint and denied all the material allegations thereof, except that he admitted marrying plaintiff in 1906. However, defendant denies that the parties are still husband and wife, alleging by way of affirmative defense that in 1927 while he was a *bona fide* resident of the state of Pennsylvania he secured a divorce from this plaintiff.

When the case came up for trial, by motion properly made, plaintiff requested an allowance for attorney fees. Defendant opposed this motion on the ground that the parties had been validly divorced in 1927 by the Pennsylvania decree. In support of this contention the defendant offered and there was received in evidence the transcript of the proceedings in the Pennsylvania divorce action. For the purposes of this appeal we will assume that the record is in proper form and shows a compliance with the Pennsylvania statutes. The record shows that service on the plaintiff herein was secured by means of publication of summons. It is admitted that plaintiff herein did not appear in the Pennsylvania action and was not personally served. The trial court in this action permitted the plaintiff to show that the last place the parties lived together as husband and wife was California, and that at all times since the marriage in 1906 the plaintiff herein was and is a resident of and domiciled in California. The trial court

then ruled that the plaintiff would be limited in her proof to evidence as to whether or not the residence of defendant herein in Pennsylvania was *bona fide*. The plaintiff thereupon testified that the husband left the state of California in June, 1924; that she talked to him on the day he left; that he told her he was going to Pennsylvania on business and that he would return in about six months; that he took one of the children with him; that he did not return; that he did not write to her after he left, nor did he ever request her to come to Pennsylvania; that after his departure he sent no money to her; that her husband at no time notified her that he was not coming back to California. The trial court was of the opinion that this evidence was not sufficient to show that the residence of defendant herein in Pennsylvania was not *bona fide*. The plaintiff herein then offered to prove all of the allegations of her complaint in reference to the charges of desertion and cruelty. The trial court ruled that until it was shown that the Pennsylvania decree was not regularly obtained, the plaintiff would be foreclosed from offering any evidence as to the allegations of her complaint. The effect of the trial court's ruling was to limit plaintiff in her attack upon the Pennsylvania decree to a showing either that the husband's residence in Pennsylvania was not *bona fide* or that the statutes of that state were not complied with.

Appellant contends that the Pennsylvania decree not having been rendered by a state having personal jurisdiction of her, and Pennsylvania not being the state where the parties last lived together as husband and wife, the divorce decree of that state is not entitled to full faith and credit under the United States Constitution. This is undoubtedly the law. (*Haddock* v. *Haddock*, 201 U. S. 562 [5 Ann. Cas. 1, 50 L. Ed. 867, 26 Sup. Ct. Rep. 525]; *Thompson* v. *Thompson*, 226 U. S. 551 [57 L. Ed. 347, 33 Sup. Ct. Rep. 129]; *Bruguiere* v. *Bruguiere*, 172 Cal. 199 [Ann. Cas. 1917E, 122, 155 Pac. 988].) Appellant next contends that such decree not being entitled to full faith and credit, it should not be recognized as a matter of comity, for if recognized it will affect the status of one of our own citizens who had no opportunity to be heard in that action. Respondent husband admits that the Pennsylvania decree is not entitled to full faith and credit, but contends

that as a matter of comity such decree should be recognized by this state. The question thus presented is whether or not California will, as a matter of comity, recognize the validity of a foreign decree of divorce rendered against a California citizen on constructive service, and, if so, how far this state will permit a collateral attack on such a decree.

The proper determination of this question requires a brief reference to the development of the law applicable to jurisdiction in divorce actions.

It is universally conceded that a divorce proceeding, in so far as it affects the status of the parties, is an action *in rem*. (19 Cor. Jur. 22, sec. 24; 3 Freeman on Judgments, 5th ed., 3152.) It is usually said that the "marriage status" is the *res*. Both parties to the marriage, and the state of the residence of each party to the marriage, have an interest in the marriage status. In order that any court may obtain jurisdiction over an action for divorce that court must in some way get jurisdiction over the *res* (the marriage status). The early cases assumed that such jurisdiction was obtained when the *petitioning party* was properly domiciled in the jurisdiction. (*Ditson* v. *Ditson*, 4 R. I. 87, is the leading case so holding; see, also, *Andrews* v. *Andrews*, 188 U. S. 14 [47 L. Ed. 366, 23 Sup. Ct. Rep. 237].) Until 1905 the overwhelming weight of authority was to the effect that if the petitioning party was domiciled in good faith in any state, that state could render a divorce decree on constructive service valid not only in the state of its rendition, but which would be recognized everywhere. In *Atherton* v. *Atherton*, 181 U. S. 155 [45 L. Ed. 794, 21 Sup. Ct. Rep. 544], the United States Supreme Court apparently recognized that doctrine. In that case the parties were living together and domiciled in Kentucky. That state was the last state where the parties lived together as husband and wife. The wife left the husband and came to and became domiciled in New York. She brought an action for divorce in New York, her husband defending on the ground that he had secured a divorce in Kentucky on constructive service. New York refused to recognize the validity of the Kentucky decree, on the ground that Kentucky could not in such an action affect the status of a citizen of New York. The United States Supreme Court reversed the New York decision and

held that the Kentucky decree was entitled to full faith and credit even though the wife was not served with process and did not appear in the Kentucky action, and even though at the time the decree was rendered the wife was a resident of and domiciled in New York. In so holding, however, the court pointed out that the reason the Kentucky decree was entitled to full faith and credit was because Kentucky had jurisdiction over the marriage status by virtue of the fact that that state was the matrimonial domicile, i. e., the last place the parties lived together as husband and wife. Then in 1905, the United States Supreme Court decided the Haddock case, *supra.* Here the parties were married and domiciled in the state of New York. The husband, without cause, abandoned his wife and went to and acquired a domicile in Connecticut. Thereafter the husband secured in Connecticut a divorce on constructive service. Several years later the wife sued for divorce in New York, and secured personal service on the husband. The husband set up as a defense the Connecticut decree. New York refused to recognize it. The Supreme Court of the United States held that although the Connecticut decree was probably good in that state, it was without binding force in New York, and was not entitled to full faith and credit. The court pointed out that the matrimonial domicile of the parties was New York, and that in such a case Connecticut had no jurisdiction over the marriage status so as to affect the status of a New York resident. New York could recognize the Connecticut decree, but it could not be compelled to do so under the full faith and credit clause. The result of this decision has been to create a hopeless conflict of authority as to the status of a foreign divorce rendered against a nondomiciled defendant on constructive service. Some courts refuse to recognize foreign decrees so rendered as against their own residents. It should be noted that Pennsylvania, the state rendering the decree involved in the instant case, is a state which refuses to grant any efficacy to a foreign decree secured on constructive service against one of its own citizens, at least where Pennsylvania is the matrimonial domicile. (*Colvin v. Reed,* 55 Pa. 375; *Duncan v. Duncan,* 265 Pa. 464 [109 Atl. 220].) Other states recognize such decrees to their full extent, permitting them to be attacked solely on juris-

dictional grounds. Among this latter group of states there is hopeless conflict of authority as to what constitutes a jurisdictional defect which can be collaterally attacked in a sister state. (See 39 A. L. R. 603 and 42 A. L. R. 1405, notes, where the cases are exhaustively collected and commented upon.)

The policy of the courts of this state seems never to have been exactly defined. ■ It is well settled in this state that when a foreign divorce decree is relied upon, and the record shows that the foreign law has been complied with, a presumption of validity arises, and in the absence of a successful attack on the ground the foreign court had no jurisdiction, the foreign decree will be recognized here. ■ However, it is equally well settled that it is always competent to collaterally impeach a decree of divorce rendered in another state by extrinsic evidence showing that the court pronouncing it did not have jurisdiction either of the parties or the subject matter. Thus the decree may always be attacked on the ground that the foreign court had no jurisdiction because the petitioning party was not a *bona fide* resident, or that the law of the sister state was not complied with. (*Bruguiere* v. *Bruguiere, supra; Estate of James,* 99 Cal. 374 [37 Am. St. Rep. 60, 33 Pac. 1122] ; *Estate of Pusey,* 180 Cal. 368 [181 Pac. 648] ; *Estate of Pusey,* 177 Cal. 367 [170 Pac. 846] ; *Estate of Hancock,* 156 Cal. 804 [134 Am. St. Rep. 177, 106 Pac. 58] ; *Broder* v. *Broder,* 122 Cal. App. 296 [10 Pac. (2d) 182] ; *Anthony* v. *Tarpley,* 45 Cal. App. 72 [187 Pac. 779] ; *Steinbroner* v. *Steinbroner,* 30 Cal. App. 673 [159 Pac. 235] ; *In re Culp,* 2 Cal. App. 70 [83 Pac. 89].) The courts of this state have not determined whether the foreign decree may be attacked on other grounds. Respondent relies on *Estate of James, supra,* contending that that case determined that foreign decrees, except as above stated, will be recognized in this state. In that case two persons, Sarah James and Leonora James, claimed to be the widow of the deceased. The evidence showed that the deceased married Sarah in 1859 in New York, which state was the last matrimonial domicile of the parties. The husband, the decedent, left New York and came to Missouri. In 1874 he obtained a divorce in the last-named state on constructive service against Sarah, who was still domiciled in New York. The

husband then moved to California and in 1883 married Leonora. Leonora and the decedent lived together in this state until 1887 when the husband died. Both Leonora and Sarah claimed to be the surviving widow. At page 375 the court stated:

"It will be seen from the foregoing statement that the decision of this case must turn upon the question of the validity of the decree of divorce which deceased obtained in the state of Missouri, and as to what effect shall be given to it in this state.

"While there is some conflict in the decisions upon this point, we entertain no doubt that a decree of divorce which has been regularly obtained in one state by a citizen thereof, against a nonresident defendant constructively served with process in the action, and without other notice and which is valid and effectual in the state in which such decree is rendered is equally valid in a sister state. [Citing cases.]

"We do not understand the appellant to question this proposition. . . . "

We do not think that this case is authority for the proposition that foreign decrees will be recognized in this state as a matter of comity if valid where rendered, at least in so far as it affects the status of one of our own citizens.

In the first place this decision was rendered in 1893, long before the Haddock case was decided. The theory of the decision seems to be that the Missouri decree was entitled to recognition under the full faith and credit clause. That theory is of course incorrect.

In the second place the Missouri decree did not affect the status of a California citizen. When the Missouri decree was rendered the wife was a citizen of New York. ■ It is readily conceivable that California might recognize a foreign divorce decree when such decree only affects the status of foreign citizens, but might refuse to recognize such foreign decree when it affects the status of a California citizen. California has no particular interest in the status of foreign citizens. This distinction is well recognized. (19 Cor. Jur., p. 373, sec. 841.)

In the third place the last sentence above quoted clearly indicates that the appellant therein conceded the very point involved in the instant case.

The only other California case necessary to discuss is *Bruguiere* v. *Bruguiere, supra.* In this case the parties were domiciled in California. The husband went to Nevada and secured a divorce on constructive service. Both the parties remarried on the faith of the decree. The first wife then got the second marriage annulled, and brought the present action against the first husband for separate maintenance. The court was of the opinion that the husband's residence in Nevada was not *bona fide,* but as an alternative ground of the decision stated (p. 202):

"The decision in *Haddock* v. *Haddock* . . . declares that a husband *who, without cause, abandons his wife* and takes up his residence in another state than that of their residence, thereby changes the matrimonial domicile to the state of his new residence, so that a divorce granted in that state on his complaint and upon constructive service only may be valid in that state, as an adjudication of the *res,* the *res* being the marriage relation, but that he does not thereby carry the entire relation to that state so as to make the adjudication binding upon all the states as a judgment *in rem,* and that notwithstanding the divorce in Connecticut, the court of New York could proceed to adjudge another divorce. . . . Upon the principles thus established it seems clear that the decree obtained by the husband in Nevada is not binding upon the court of California, even if his residence there was *bona fide.* . . .

"The invalidity of the Nevada decree is not due to any vice apparent upon the record, *but to the policy of the state of California which refuses faith and credit to such a decree.*"

■ In the instant case the trial judge properly permitted the plaintiff to introduce evidence tending to show that the residence of her husband in Pennsylvania was not *bona fide.* For the purposes of this appeal we will assume that the proffered evidence was insufficient, and we will therefore assume that the residence of defendant husband in Pennsylvania was *bona fide.* The question next presented is whether or not appellant should have been permitted to prove the allegations of her complaint to the effect that the defendant deserted her, and that he was the one that was guilty of cruelty. In other words, although Pennsylvania found in a noncontested action where the wife was not

present and had no opportunity to refute the charges, that she was guilty of cruelty, and inferentially found that the husband was the innocent party, can the wife in this state collaterally attack that finding and show that she was the innocent party, and that the husband by means of false testimony secured the divorce in that state? If the wife was in fact the innocent party, would it not constitute a fraud as against her, and a fraudulent evasion of the laws of this state, if this state as a matter of comity should recognize the foreign decree when such decree affects the status of a resident of this state, and such decree was secured on false testimony as to who was the wrongdoer? We think that the Bruguiere case, above cited, indicates that such evidence should be admitted.

■ So far as the courts of this state are concerned this state has sole and exclusive jurisdiction over the status of those domiciled within its borders. Assuming that the wife can prove the allegations of her complaint, as she offered to do, and can show that she was deserted by her husband, and that he was the one that was guilty of cruelty and that she was innocent of wrongdoing, if, under such circumstances, this state enforces as against her the Pennsylvania decree, this state will be recognizing a foreign decree secured without the presence of one of its own citizens, affecting the status of one of its own citizens, when such decree was obtained on false testimony. This state would be thus placing its sanction on a fraud committed in the Pennsylvania court. ■ On the other hand, if the evidence shows that the husband left California and went to Pennsylvania due to the wife's fault, and that she was the wrongdoer and that he was innocent of wrongdoing, then we think the true rule to be that this state should, as a matter of comity, recognize the Pennsylvania decree. We think this rule will result in no hardship. ■ The foreign decree, regular on its face, is entitled to a presumption of validity. The burden is on the party attacking it. But if the spouse domiciled in this state can show that the foreign decree was obtained on false testimony amounting to a fraud on the foreign court, the decree will not be recognized. Moreover, we think that if such proof be made it can properly be considered as showing a jurisdictional defect in the foreign decree, at least as far as the courts of this state are concerned. As already pointed

out, the *res* involved in a divorce proceeding is the marriage status, in which both parties and the state have an interest.

Under the rule above enunciated, in order that a state other than the state of the matrimonial domicile can grant a divorce against a nondomiciled spouse on constructive service which this state will recognize, the foreign state must in some way get jurisdiction over the interest of the non-domiciled spouse in the marriage status. If one spouse puts it in the power of the other, due to his wrongful conduct, to rightfully live separate and apart, and to acquire a new and separate domicile, the wrongdoer must be deemed to have consented (by such wrongful conduct) to have his interest in the marriage status determined in the state where the nonoffending spouse is domiciled. On the other hand, if one spouse wrongfully lives separate and apart from the other nonoffending spouse, the latter spouse has not subjected his interest in the marriage status to the jurisdiction where the offending spouse may be domiciled, and a decree rendered there on constructive service will not be entitled as a matter of comity to recognition here. It therefore follows that evidence as to who is the wrongdoer goes to the jurisdiction of the foreign court.

It is true that under the test above outlined, whether this state will recognize a foreign divorce decree rendered on constructive service against one of its own citizens is made to depend upon the *fact* of who is the innocent party. But it is also true that it is universally recognized that a foreign decree may always be collaterally attacked on the ground that the petitioning party did not in *fact* have a *bona fide* domicile in the foreign state. Both the question of residence and the question of who was the wrongdoer, in our opinion, go to the jurisdiction of the foreign court.

The rule adopted in this opinion is the rule that has been adopted in some of the most recent and best reasoned cases. In *Dean* v. *Dean*, 241 N. Y. 240, at page 245 [42 A. L. R. 1389, 149 N. E. 844, 846], Judge Cardozo states the rule as follows: ''The wife domiciled in Canada and there abandoned by her husband, became by her marriage a party to a relation which the courts of Pennsylvania have attempted to destroy. They have done this though there has been no submission to the jurisdiction by her, upon the basis of a domicile which the erring husband has wrongfully set up

apart from her. We think the judgments of this court leave no escape from the conclusion that according to the standards of justice prevalent among us, injustice would be done if that attempt were to prevail.''

See, also, *Wagoner* v. *Wagoner*, 287 Mo. 567 [229 S. W. 1064] ; *Montmorency* v. *Montmorency*, (Tex. Civ. App.) 139 S. W. 1168, at page 1171; 39 Harvard Law Review, 417. It should also be mentioned that the test adopted in this opinion is the one adopted by the American Law Institute in the Restatement of the Law of Conflict of Laws (1930), section 119.

There is a strong public as well as private interest in the marriage relationship. As a matter of policy and justice it can hardly be gainsaid that California should not place its sanction on a foreign divorce which adversely affects the status of one of its own citizens, and which, incidentally, if recognized in the instant case, will cut off the wife's right to alimony and support, if the spouse domiciled here can show that she was innocent of wrongdoing and that the Pennsylvania decree was secured on false testimony. If one spouse may pick out a state far removed from the matrimonial domicile and acquire a residence there, and then get a divorce on constructive service on testimony which is false, and if this court should hold that such decree must be recognized in this state so as to terminate the marriage relationship of a spouse domiciled here, when the resident spouse was innocent of wrongdoing, this court would be aiding and abetting the fraud practiced on the foreign court and on the resident here. This we are not inclined to do.

It is, therefore, our opinion that it was error for the trial court to have prevented appellant from proving, if she could, that the respondent husband deserted her, and that he was the one guilty of cruelty. For that reason the judgment appealed from must be reversed. This conclusion makes it unnecessary to consider the other contentions advanced by appellant for the reason that all property rights of the parties may be determined in the retrial.

The judgment appealed from is reversed.