### KRASKIN v. KRASKIN.
### No. 7124.

United States Court of Appeals for the District of Columbia.

Decided March 13, 1939.

---

Lester Wood and Bernard M. Chernoff, both of Washington, D. C., for appellant.

Raymond Neudecker, of Washington, D. C., for appellee.

Before STEPHENS, MILLER, and EGDERTON, Associate Justices.

MILLER, Associate Justice.

Lewis Kraskin, appellant, married Clara Kraskin, appellee, in 1917. They lived together in the District of Columbia until 1932, when they separated; appellant moved to Maryland and appellee remained in the District. In 1935, appellant was granted a divorce in Maryland on the ground of desertion. Appellee was neither personally served nor did she participate in that proceeding. Thereafter, in the same year, she sued in the lower court for a divorce, for alimony, for custody of their minor child, and for a decree vacating and setting aside the Maryland decree. Appellant appeared and answered, the case was heard upon evidence, and a decree of divorce was granted in favor of appellee. This appeal is from that decree.

The important question of the case is whether the Maryland decree was entitled to full faith and credit in the District of Columbia or, in the alternative, whether it should have been recognized by the lower court as a matter of comity. Appellant contends that the Maryland decree is entitled to full faith and credit in the District of Columbia because Maryland was the last matrimonial domicil; hence that the Maryland court had jurisdiction of the parties under the rule as stated in Atherton v. Atherton, 181 U.S. 155, 21 S.Ct. 544, 45 L.Ed. 794. The theory of this contention is that when appellant moved to Maryland he provided a home for his entire family, and invited his wife to go with him; that thereafter, on several occasions, he endeavored to persuade her to continue living with him, but she refused to do so. To the contrary, the lower court found: "1. That the defendant, Lewis H. Kraskin, on or about January 15, 1932, in the District of Columbia, deserted and abandoned his wife, the plaintiff herein, and said desertion and abandonment have continued until the present time, and the defendant has not endeavored to effect a reconciliation, nor has he ever since provided a home to which the plaintiff was in-

vited, or at liberty to go. 2. That following the desertion and abandonment of the plaintiff in the District of Columbia, the defendant established his residence in the State of Maryland and has continuously lived in the State of Maryland and lives in the State of Maryland at the present time, and is a bona fide resident of the said State of Maryland. 3. That the matrimonial domicile of the parties hereto is the District of Columbia, and that the defendant did not transfer said matrimonial domicile to the State of Maryland when he went there to live." Upon an examination of the record we see no reason to question those findings.[1]

■ On the authority of Haddock v. Haddock[2] the Maryland decree must be denied full faith and credit in the present case. Here, as in that case, the husband separated from his wife and went to another state, where he procured a divorce from her without an appearance upon her part. Here, as there, the lower court held that the absconding husband was the one at fault. Under the circumstances, none of the requirements are present for recognition of the Maryland decree under the full faith and credit clause.[3]

The case of Davis v. Davis,[4] relied upon by appellant, has no application to the present situation. It differs in several material respects. In that case the defendant spouse had actual notice; she appeared by a plea which asserted that it was a special appearance made for the sole purpose of challenging jurisdiction; the Supreme Court held that by her conduct, and that of her counsel thereafter, she made more than a special appearance; as a result of all of which the decree of the Virginia court must be given effect in the District of Columbia as a matter of right.

Moreover, in the present case, as in the Haddock case, and unlike the Davis case, the absconding spouse was found by the lower court to be the one at fault.[5] Consequently, both grounds upon which the Davis case was distinguished from the Haddock case are absent here.

■ However, as the Maryland court had jurisdiction of appellant, a resident of that state, its decree was operative within its own borders, and the District of Columbia could, upon principles of comity, give to that decree such efficacy as seemed justified by considerations of public policy.[6]

Other considerations being equal, the desirability of uniform administration of marriage and divorce laws is frequently suggested.[7] Some cases have been decided upon this theory.[8] Legislation has been proposed to accomplish the same end,[9] and some states have, in fact, enacted legisla-

---

[1] Pollock v. Jameson, 63 App.D.C. 152, 155, 70 F.2d 756, 759; Sears v. Sears, 67 App.D.C. 379, 380, 92 F.2d 530, 531; Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 420, 57 S.Ct. 772, 81 L.Ed. 1193, 112 A.L.R. 293.

[2] 201 U.S. 562, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1.

[3] U.S.Const. Art. 4, § 1, U.S.C.A.; R.S. § 905, 28 U.S.C.A. § 687; Atherton v. Atherton, 181 U.S. 155, 21 S.Ct. 544, 45 L.Ed. 794; Haddock v. Haddock, supra, note 2. See Snyder v. Buckeye State Bldg. & Loan Co., 26 Ohio App. 166, 160 N.E. 37, 39; 1 Willoughby, Constitution of the United States (2d ed. 1929) 279.

[4] 305 U.S. 32, 42, 43, 59 S.Ct. 3, 83 L. Ed. 26. See Strahorn, Jr., The Supreme Court Revisits Haddock, 33 Ill.L.Rev. 412.

[5] See Beale, Haddock Revisited, 39 Harv.L.Rev. 417, 424 et seq., 3 Selected Essays on Const.Law 1345, 1351 et seq.; McClintock, Fault as an Element of Divorce Jurisdiction, 37 Yale L.J. 564, 3 Selected Essays on Const.Law 1377.

[6] See Haddock v. Haddock, 201 U.S. 562, 570, 26 S.Ct. 525, 50 L.Ed. 867, 5 Ann.Cas. 1; Atkinson v. Atkinson, 65 App.D.C. 241, 243, 82 F.2d 847, 849; Leflar, Jurisdiction to Grant Divorces, 7 Miss.L.J. 445, 3 Selected Essays on Const.Law 1356, 1363. See also, Notes, 86 A.L.R. 1329, 39 A.L.R. 603.

[7] Beale, supra note 5, at 427, 3 Selected Essays on Const. Law at 1353; McClintock, supra note 5, at 570, 3 Selected Essays on Const. Law at 1383.

[8] Gildersleeve v. Gildersleeve, 88 Conn. 689, 699, 92 A. 684, 688, Ann.Cas.1916B, 920: "For the present we may not have uniform divorce legislation, but we may contribute to a uniform treatment of divorced persons and their children and property and property rights by obeying the dictates of comity, and thus avoiding unwholesome and harsh consequences which are the natural fruits of the opposite course." See also, Kenner v. Kenner, 139 Tenn. 211, 220, 201 S.W. 779, 782, L.R.A.1918E, 587; Miller v. Miller, 200 Iowa 1193, 1200, 1201, 206 N.W. 262, 265.

[9] See Bloedorn v. Bloedorn, 64 App.D. C. 199, 76 F.2d 812; Carter v. Carter Coal Co., 298 U.S. 238, 292, 56 S.Ct. 855, 80 L.Ed. 1160; Reports of Commissioners of Uniform State Laws (1907) 31 A.

tion requiring recognition of ex parte divorces secured in accordance with the laws of a sister state.[10] Such uniformity has been slow in coming, however, probably because of pronounced variations in local attitudes upon the subject,[11] and because of the realization that indiscriminating adherence to the concept of uniformity would result in an abandonment of the power and privilege—declared in the Haddock case— of applying local tests of public policy to the divorce decrees of other states when the full faith and credit rule is not applicable and when it seems desirable to do so.

■■ This court has from time to time stated considerations of public policy which, in particular cases, have been persuasive in determining whether voluntary recognition should be given to divorce decrees. Thus, non-existence of children, remarriage of the parties, long-continued separation under circumstances which indicate impossibility of reconciliation, attacks made upon the decree only by third persons in spite of acquiescence therein by the divorced persons themselves, and uniformity of the laws of the two affected states as regards grounds for divorce, all have been given weight in determining whether a foreign decree may be recognized in the District of Columbia without violating its public policy or the principles of morality.[12]

■ But the record in the present case reveals a total situation unlike that which existed in any of the cases to which reference has just been made. Upon the subject of marital fault—the basis of the decree of which recognition was sought—the lower court's findings were in sharp conflict with those of the Maryland court. As the lower court had before it both contesting parties, and had also an opportunity for full disclosure of all facts, while the Maryland court did not, this conflict is one of major significance.[13] Under the circumstances it would seem that to recognize the Maryland decree in this case would reward the spouse found guilty by the lower court, and punish the innocent one. Moreover, it would put a premium upon the perpetration of fraud upon the State of Maryland.[14] Neither good morals nor public policy would be

.B.A.Rep. 1120, 1239; Terry, Uniform State Laws (1920) 296, 300; Bingham, The American Law Institute vs. The Supreme Court, 21 Corn.L.Q. 393, 418.

[10] See Wear v. Wear, 130 Kan. 205, 222, 285 P. 606, 615, 72 A.L.R. 425; Humphreys v. Humphreys, 139 Va. 146, 154–155, 123 S.E. 554, 556–557; Caswell v. Caswell, 84 W.Va. 575, 584, 100 S. E. 482, 485. See also, Schneider v. Schneider, 103 N.J.Eq. 149, 152, 142 A. 417, 418.

[11] Leflar, Jurisdiction to Grant Divorces, 7 Miss.L.J. 445, 3 Selected Essays on Const.Law 1356, 1364: "The experience of the Commission on Uniform State Laws throws interesting light on the public attitude toward the interstate divorce problem. In 1907 the Commissioners promulgated a Uniform Annulment of Marriage and Divorce Act, which undertook to set out in detail the grounds for annulment of marriages, divorce from bed and board, and absolute divorce, also the circumstances under which jurisdiction might be acquired to grant decrees giving such relief, and various other matters. This statute was adopted in only three states, Delaware, New Jersey, and Wisconsin. Its failure to gain general approval was probably due to the fact that relief from the marital status is a question upon which strong local public policy, or at least strong local public interest, varies much among the states, many taking the attitude that the severability of the marriage relationship, being

a matter as to which numerous divergent views are held in modern society, is peculiarly the sort of problem that ought to be left open for experimentation in the more or less isolated social laboratories which the 48 states have been supposed to constitute. At any rate, the Commissioners in 1927 withdrew their recommendation of the 1907 Act, and in 1930 recommended a new act called the Uniform Divorce Jurisdiction Act, which in 1934 had been adopted by one state, Vermont." See Bingham, The American Law Institute vs. The Supreme Court, 21 Corn.L.Q. 393, 419.

[12] Atkinson v. Atkinson, 65 App.D.C. 241, 82 F.2d 847; Hellmuth v. Hellmuth, 69 App.D.C. 64, 98 F.2d 431, certiorari denied 59 S.Ct. 92, 83 L.Ed. ——. See Beasley v. Texas & Pacific Ry., 191 U.S. 492, 498, 24 S.Ct. 164, 166, 48 L.Ed. 274: "But the very meaning of public policy is the interest of others than the parties * * *." Cf. Garman v. Garman, 70 App.D.C. 4, 102 F.2d 272.

[13] See Peaslee, Ex parte Divorce, 28 Harv.L.Rev. 457, 470–472.

[14] See Delanoy v. Delanoy, 216 Cal. 27, 37, 13 P.2d 719, 722–723, 86 A.L.R. 1321; Dean v. Dean, 241 N.Y. 240, 245, 149 N.E. 844, 846, 42 A.L.R. 1398; Note, 86 A.L.R. 1329; Restatement, Conflict of Laws (1934) § 113. See also, Dumont v. Dumont, N.J.Ch., 45 A. 107, 111; Ballentine v. Ballentine, 112 N.J.Eq. 222, 164 A. 5; Strahorn, Jr., A Rationale of the Haddock Case, 32 Ill.L.Rev. 796.

served by such a result. Consequently, the decree of the lower court was correct.

Affirmed.