## GOODLOE v. HAWK.

### No. 7437.

United States Court of Appeals for the District of Columbia.

Decided June 24, 1940.

---

Raymond Neudecker, of Washington, D. C., for appellant.

James A. Cobb, of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

This is an appeal from a judgment of the District Court dismissing an annulment action. The propriety of the dismissal depends upon the effect to be given a decree of a Virginia court divorcing the appellee (defendant below) from her first husband.

From the conflicting testimony in the record and the findings of the District Court thereon, the circumstances surrounding this challenged divorce decree appear as follows: The appellee married one C. M. Hawk in 1918 and lived with him in the District of Columbia until May 1, 1923, when he deserted her. About this time she was "keeping company" with the appellant and became interested in securing a divorce from her first husband. Desertion was not then a ground for absolute divorce in the District of Columbia, although it was in Virginia. In July of 1924 she moved her actual residence to Alexandria, Virginia. Motivating this change of residence was, of course, her desire for a divorce but in the District Court the appellee testified that "after I got over there I didn't know just how long [I intended to stay]". Whether the appellant made clear his intentions toward the appellee before or after her removal to Virginia is not clear. The appellee testified, however, that *after* she moved to Virginia "he asked me to get a divorce so that he could marry me" and that in a letter he stated "he would pay for it [the divorce], and it was paid for, in installments". Under the Virginia divorce statute, its courts had jurisdiction to grant the appellee a divorce if she was domiciled in and an actual bona fide resident of the state for at least a year prior to the commencement of her action.[1] On October 29, 1925, she filed suit for divorce in a court of competent jurisdiction in Alexandria, Virginia. Constructive notice by publication was given of the action but her then husband, Hawk, did not appear. On the basis of testimony adduced before it, the Virginia court found that the appellee had established her domicile in Virginia and had been an actual bona fide resident of the state for the requisite

---

[1] Virginia Code (1924) § 5105: "* * * No suit for * * * divorce shall be maintainable, unless one of the parties is domiciled in, and is and has been an actual bona fide resident of this State for at least one year preceding the commencement of the suit".

period and that her husband, Hawk, had deserted her. A divorce a mensa et thoro was granted under date of February 20, 1926, which was enlarged to an absolute divorce September 18, 1926. Some time thereafter, the appellee moved her residence back to the District of Columbia and later, June 4, 1927, married the appellant.

The parties have lived together in the District of Columbia as man and wife until recently. Incompatibility marked the latter period of their association, however, and the appellant sought in this action to have the marriage annulled on the theory that the appellee's divorce from her first husband was not valid. He charged that she was neither domiciled in nor a bona fide resident of Virginia at any time and that the divorce therefore had no binding effect on any one. The appellee answered that she was both domiciled in and a resident of Alexandria, Virginia prior to and at the time of securing her divorce and, further, that the appellant was precluded from questioning those facts because she secured the Virginia divorce at his instance.

After trial of the issues framed, the District Court found that the appellant had "caused the divorce action to be instituted and carried on down there in Virginia" but predicated its judgment dismissing the action on the finding that the appellee "did bona fide maintain a residence in the State of Virginia and while there domiciled did bona fide obtain a divorce from her husband * * * and that the Decree [of the Virginia court] * * * awarding the * * * [appellee] a divorce a vin-

culo matrimonii, was * * * a valid decree * * *". From that judgment this appeal was prosecuted.

■■ Under our previous decisions the decree of the Virginia court granting the appellee a divorce from her first husband will be recognized here if it is valid under the law of Virginia,[2] i. e., if she was domiciled in and a bona fide resident of Virginia as required by the divorce statute there, and if no fraud was committed on the Virginia court in respect to Hawk's alleged desertion. The District Court expressly found that the appellee was a bona fide resident of Virginia and its finding that the decree was valid amounts to a finding that Hawk did desert her and that no fraud was practiced on the Virginia court in this respect. Those findings are amply supported by the record and cannot therefore be disturbed by this court on appeal.[3]

■ That leaves only the question whether the appellee by moving to Virginia acquired a Virginia domicile. Neither the fact that she went there motivated by a desire to obtain a divorce,[4] nor the fact that she left some time after securing it forecloses this issue if it can be said she had at one time during her residence there an intention to remain for an indefinite period.[5] Although on the facts as stated that might seem doubtful, the District Court in an independent inquiry concluded, as the Virginia court originally, that she did acquire a Virginia domicile. In light of the strong presumption in favor of the Virginia court's finding on this issue,[6] the character

---

2 Atkinson v. Atkinson, 65 App.D.C. 241, 82 F.2d 847; Hellmuth v. Hellmuth, 69 App.D.C. 64, 98 F.2d 431, certiorari denied, 305 U.S. 597, 59 S.Ct. 92, 83 L. Ed. 378. See Kraskin v. Kraskin, 70 App.D.C. 85, 88, 104 F.2d 218.

3 In cases of this character findings of the District Court will not be disturbed unless manifestly erroneous. Cole v. Cole, 52 App.D.C. 302, 286 F. 764; Diggs v. Diggs, 53 App.D.C. 56, 288 F. 262; Blundon v. Blundon, 56 App.D.C. 313, 12 F.2d 848; Frazier v. Frazier, 61 App.D.C. 279, 61 F.2d 920.

4 Motive in changing residence from one jurisdiction to another is not material to the question of whether a new domicile has been acquired if the new residence is intended as a home for an indefinite period. Williamson v. Osenton, 232 U.S. 619, 625, 34 S.Ct. 442, 58 L.Ed. 758; Gildersleeve v. Gildersleeve, 88 Conn. 689, 92 A. 684, Ann.Cas.1916B,

920; Note 106 A.L.R. 6, 16 and, cases cited; Restatement of Conflicts, § 22. See also Squire v. Squire, 186 Ark. 511, 54 S.W.2d 281.

5 "If a person has actually removed to another place with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it is deemed his place of domicile notwithstanding he may entertain a floating intention to return at some future period." Story, Conflict of Laws (7th ed.) § 46, quoted and applied in Bradstreet v. Bradstreet, 7 Mackey (18 D.C.) 229, 240. See Felker v. Henderson, 78 N.H. 509, 102 A. 623, L.R.A.1918E, 510; Bragg v. Bragg, 32 Cal.App.2d 611, 90 P.2d 329, 330; Beale, Conflict of Laws (1935) § 19.1 and authorities cited. See also cases cited supra n. 4.

6 Cardinale v. Cardinale, 8 Cal.2d 762, 68 P.2d 351, 353; Magowan v. Magowan, 57 N.J.Eq. 322, 42 A. 330, 73 Am.St.

of the evidence introduced in the District Court, and the rule that District Court findings in this type of case will not be disturbed unless manifestly erroneous,[7] we are unwilling to disturb that finding.[8] We need not, however, rest our decision on that ground alone for we are of the opinion that under the circumstances the Virginia court's finding that the appellee acquired a Virginia domicile is conclusive in this litigation.

On September 18, 1926, the Virginia court granted the appellee the divorce in question. It appears that on the strength of that decree her first husband remarried and has several children by his second wife. The appellant, characterized by the District Court as the one who "caused the divorce suit to be instituted and carried on down there in Virginia", married the appellee on June 4, 1927, and lived with her as a husband for more than a decade before instituting this action. Under these circumstances it would seem that he should be barred by the salutary principles of laches or estoppel from challenging the Virginia court's finding that the appellee was domiciled there.[9] In Simmons v. Simmons, 57 App.D.C. 216, 19 F.2d 690, 54 A.L.R. 75, however, in a factual situation somewhat similar, this court took the view that the companion doctrine of "unclean hands" could not be asserted against one seeking an annulment on the ground that his wife's divorce from a former spouse was not valid. This ruling was reluctantly followed in Frey v. Frey, 61 App.D.C. 232, 59 F.2d 1046, to the prejudice of innocent third parties involved in the marriages contracted in reliance on the challenged divorce.

We think it proper to here re-examine the rationale of those decisions. In part at least they appear to rest on an assumption that our annulment statute, declaring a second marriage void where the first has not been terminated by death or a decree of divorce, precludes application of these doctrines. The assumption is unwarranted, however, for this statute does not purport, expressly or impliedly, to prescribe a method for determining the effect to be given a divorce decree in an action to annul a subsequent marriage.[10] That is left entirely to the courts for judicial determination. Marriage and divorce cannot, however, be treated by the courts in the same manner as formation and cancellation of ordinary private contracts. The state has an interest in the domestic relations of its

Rep. 645; Delanoy v. Delanoy, 216 Cal. 27, 13 P.2d 719, 86 A.L.R. 1321; Renner v. Renner, 181 A. 191, 198, 13 N.J. Misc. 749; Comm. ex rel. Thompson v. Yarnell, 313 Pa. 244, 169 A. 370, 373; In re Smidt's Will, 162 Misc. 596, 295 N. Y.S. 227, 229.

[7] See cases cited supra note 3.

[8] Cf. Glaser v. Glaser, 276 N.Y. 296, 12 N.E.2d 305.

[9] Curry v. Curry, 65 App.D.C. 47, 79 F.2d 172; Bliss v. Bliss, 60 App.D.C. 237, 50 F.2d 1002; Dry v. Rice, 147 Va. 331, 137 S.E. 473. See cases reviewed in Notes 109 A.L.R. 1018; 122 A.L.R. 1321. A case on all fours is Kaufman v. Kaufman, 177 App.Div. 162, 163 N.Y.S. 566, 569, cited with approval by this court in Curry v. Curry, supra.

In the instant case the District Court found that the appellant "caused the divorce action to be instituted and carried on down there in Virginia". If the estoppel or laches doctrines are to be recognized in any case, it would seem that they should be applied here. The fact that the appellant was not a party of record to the divorce proceeding does not, in our opinion, offer any obstacle. Equity has regard for realities. Under the finding of the District Court the appellant is as responsible for the action of the Virginia court, in a real sense, as

the appellee, if not more so. We think the view taken in Kaufman v. Kaufman, supra, to the effect that such a party may be estopped to question the validity of the divorce is sound.

It is interesting to note that some courts have taken the view that a subsequent husband has no legal interest sufficient to give him standing to question his wife's prior divorce. Deyette v. Deyette, 92 Vt. 305, 104 A. 232, 234, 4 A. L.R. 1115; Hall v. Hall, 139 App.Div. 120, 123 N.Y.S. 1056; Cromarty v. Cromarty, 38 Ont.L.Rep. 481; Note 120 A.L.R. 815, 822.

[10] D.C.Code (1929) Title 14, § 1: "The following marriages are prohibited in the District of Columbia and shall be absolutely void ab initio, without being so decreed, and their nullity may be shown in any collateral proceedings, namely:

"First. The marriage of a man with his grandmother, [enumerating incestuous marriages].

"Second. The marriage of a woman with her grandfather, [enumerating incestuous marriages].

"Third. The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce."

citizens and in determining the effect to be given an irregular divorce decree inquiry must be made respecting the public policy in the premises. Since there has been no legislative declaration respecting the policy of the state toward irregular foreign divorces it must be determined judicially. That brings us to the real ground for the Simmons and Frey decisions.

In both cases this court was called on to determine the effect to be given foreign divorces secured by perpetration of fraud respecting residence, domicile and the cause for divorce. In rejecting the contention that the plaintiff was barred by his own complicity from attacking the divorce, the broad proposition was laid down in both cases that it was contrary to public policy to recognize any irregular foreign divorce,[11] without regard to the unclean hands of the plaintiff or the disastrous effect on third parties involved in remarriages. That, we regard as the real basis for those decisions.

In light of Curry v. Curry, 65 App.D.C. 47, 79 F.2d 172 and other later decisions of this court,[12] however, it can no longer be said that public policy requires non-recognition of all irregular foreign divorces. We have recognized that the interest of the state in many situations may lie with recognition of such divorces and preservation of remarriages rather than a dubious attempt to resurrect the original. From a pragmatic viewpoint, judicial invalidation of irregular foreign divorces and attendant remarriages, years after both events, is a less than ineffective sanction against an institution whose charm lies in its immediate respectability. We think it may now be stated that the *general* public policy in this jurisdiction, as judicially interpreted, no longer prevents application in annulment actions of the laches and estoppel doctrines in determining the effect to be given such divorce decrees.

Doubtless there are circumstances wherein a *particular* public policy requires annulment of a marriage without regard to the guilt or innocence of the parties affected[13] and many of the cases rejecting the laches or estoppel doctrines involve such situations.[14] The Simmons and Frey cases may indicate that a prior divorce representing

[11] The statement in the opinions that the doctrine of "unclean hands" is inapplicable in determining the effect to be given a prior divorce in an annulment action, for the reason that the state is a party, must be taken to mean that it is contrary to public policy to accord irregular foreign divorces recognition on that ground.

[12] See cases cited supra n. 2.

[13] In connection with this point see Garman v. Garman, 70 App.D.C. 4, 102 F.2d 272, 122 A.L.R. 1317 (a Mexican "mail order" divorce refused recognition here); Kraskin v. Kraskin, 70 App.D.C. 85, 104 F.2d 218 (divorce secured in another jurisdiction on constructive service will not be recognized here where fraud was practiced on the divorce forum respecting the cause for divorce).

[14] The authorities relied on in Simmons v. Simmons, supra, may all be distinguished on the ground that a *particular* and *expressed* public policy required annulment of the marriages in question without regard to the guilt or innocence of the moving party. Thus, in Freda v. Bergman, 77 N.J.Eq. 46, 76 A. 460, 462, and Lynch v. Lynch, 34 R.I. 261, 83 A. 83, from the statement of fact in the opinions it appears that a married woman undertook, without benefit of any judicial divorce decree, to marry another. Martin v. Martin, 54 W.Va. 301, 46 S.E. 120, 1 Ann.Cas. 612 involved an incestu-

ous marriage. Two other decisions relied on were Slauzis v. Slauzis, 255 Ill. 314, 99 N.E. 640, L.R.A.1916C, 741, Ann.Cas. 1913D, 454 and Heflinger v. Heflinger, 136 Va. 289, 118 S.E. 316, 32 A.L.R. 1088. Both involved marriages contracted in violation of a statute prohibiting remarriage within a certain period after divorce. The only other decision cited was Andrews v. Andrews, 188 U.S. 14, 23 S.Ct. 237, 47 L.Ed. 366. That case went to the Supreme Court on the question whether Massachusetts was required by the full faith and credit clause of the Federal Constitution to recognize a collusive divorce secured by its citizens in another state, and not whether it might do so as a matter of comity. Moreover, there was in force at that time a Massachusetts statute providing that a divorce secured by a citizen of the state "for a cause which occurred here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this commonwealth, * * * shall be of no force and effect in this commonwealth." Rev.Laws c. 152, § 35. Cf. Chapman v. Chapman, 224 Mass. 427, 113 N.E. 359, L.R.A.1916F, 528 (in a case not within the terms of this statute the estoppel doctrine may be invoked to determine the effect to be given an irregular foreign divorce decree).

In light of the reliance in Simmons v. Simmons, supra, on the decision of the

active fraud on the foreign tribunal must, as a matter of public policy, be so regarded. [15] It will be recalled in this connection that as regards the divorce here challenged no fraud was practiced on the Virginia court respecting the appellee's bona fide residence there nor the fact of her then husband's desertion.

The circumstances of the instant case are such that we think it clear the interests of the state will best be served by recognizing the Virginia decree divorcing the appellee from her first husband as effective. There is, therefore, no reason why the appellant should not be barred by laches or estoppel from challenging the Virginia court's finding that the appellee was domiciled there, and every reason why he should.

We conclude that in this litigation the appellee's divorce from her first husband must be recognized and her marriage with the appellant left undisturbed. The judgment of the District Court is affirmed.

Affirmed.

---

Virginia Supreme Court in Heflinger v. Heflinger, supra, and in view of the fact that the divorce challenged in the instant case was secured in Virginia, it is of considerable significance to note that in Dry v. Rice, 147 Va. 331, 137 S.E. 473, decided prior to but not called to the attention of this court in the Simmons case, the Virginia court refused on the ground of laches to allow a first husband to question the validity of his wife's Nevada divorce and remarriage, thereby making it clear that in Virginia there is no general public policy against application of equitable principles in determining the effect to be given an irregular foreign divorce.

[15] See note 13 supra.