Helen Marceau **SIDEBOTHAM,**
Plaintiff,

v.

W. A. **ROBISON,** Administrator of the Estate of Robert Sidebotham, Deceased, et al., **Defendants.**

No. 32531.

United States District Court
N. D. California, S. D.

Jan. 24, 1956.

Manuel Ruiz, Jr., Los Angeles, Cal., for plaintiff.

Delger Trowbridge, San Rafael, Cal., Theo M. Monell, Frank J. Fontes, San Francisco, Cal., for defendants.

ROCHE, Chief Judge.

This case was removed to the federal court because of diversity of citizenship, 28 U.S.C. § 1441.

The background of this case in its pleading stage, and the major allegations of plaintiff's complaint, are to be found in the opinion of the Court of Appeals reported in 9 Cir., 216 F.2d 816, 831. The lower court granted motions to dismiss the complaint on file herein on November 5, 1953, without leave to amend. This order was appealed, and the Court of Appeals ruled that "the appellant, in her third amended complaint, has pleaded facts showing a violation of her rights to property claimed and held by the appellees."

On the trial of this case the plaintiff proved by credible evidence that she was the victim of a fraud on the part of her husband, Robert Sidebotham, in that he kept her in ignorance of the true extent of their community property. Further, that she did not until after the death of Robert Sidebotham on December 21, 1951 discover facts constituting fraud against her, from which she here seeks relief. In other words, plaintiff sustained the burden of proving the allegations of her complaint, i. e., fraud; her reliance on the fraudulent representations of decedent; and her lack of knowledge of the true extent of the community property of the marriage up until the latter part of 1951.

The defendants raised several defenses to plaintiff's claim:

(1) that the parties were validly divorced in the year 1940 by virtue of a Wyoming decree secured by decedent;

(2) that the statement, "there is no community property" in the plaintiff's Reno divorce complaint should preclude her recovery herein;

(3) that plaintiff did not sustain her burden of proving that the property on hand at the time of death was community property rather than decedent's separate property;

(4) that the decree in the proceeding commenced by plaintiff under Section 1080 of the Probate Code is res judicata in this case; and

(5) that plaintiff has allowed the statute of limitations to run against her, has been guilty of laches or by her conduct has estopped herself from relying on the Nevada divorce decree.

(1) Validity of Wyoming Divorce

■ The defendants contend that the Wyoming divorce decree secured by the decedent in 1940 was valid. The plaintiff contends that said decree was void because of false statements in the affidavit made by decedent to obtain the order of publication of summons. Said Wyoming decree, which in any event did not purport to dispose of any property rights between the spouses is subject to collateral attack. The plaintiff herein, a California resident, did not participate in the Wyoming proceedings nor did she make a personal appearance therein.

■ The parties after their marriage in 1928 lived in the State of California, and lived in other states, as husband and wife. The facts showed that the decedent was living separate and apart from his wife, without her fault, at the time he secured the Wyoming decree by means of substituted service. There was no evidence whatsoever, other than the recital in the Wyoming decree, that the decedent ever resided there, nor did that fact change the matrimonial domicile of the parties from California.

The evidence is uncontradicted that in 1940, when the decedent procured his divorce in Wyoming, he stated upon his oath, that the residence of the plaintiff was "unknown and cannot, with reasonable diligence be ascertained." He thereby committed a fraud upon the Wyoming Court, and upon the plaintiff,

his wife. Plaintiff testified that decedent visited her, cohabited with her, and paid her rent in the year 1940. This testimony was corroborated by Mr. Scardino, whose parents owned the hotel where plaintiff resided at that time. This evidence establishes the fact that decedent did know where his wife was residing at the time he swore he did not. The divorce decree rendered by the Wyoming Court is not entitled to full faith and credit, Delanoy v. Delanoy, 216 Cal. 27, 13 P.2d 719, 86 A.L.R. 1321, and the fraud committed by decedent renders the decree invalid.

### (2) The Reno Divorce Decree

■ Defendants contend that plaintiff is in error in maintaining that the Nevada divorce decree secured by her in 1946 is helpful to her case. Defendant states that there is nothing in the opinion of the Court of Appeals to overthrow the usual rule concerning admissions against interest, and that the statement "there is no community property" appearing in plaintiff's divorce complaint was an admission against interest by plaintiff. In view of all of the evidence it cannot be said that this statement contained in plaintiff's divorce complaint should preclude recovery in this case. Plaintiff's position, which is the basis of her suit, is that for all the years that she was married to decedent, and up until 1951, she was completely uninformed as to any community property which may have been in existence. Her allegation in her divorce complaint was based on this limited knowledge, and her reliance on decedent's statements that he did not have any property. Plaintiff's statement made as it was in reliance on decedent's fraudulent representations, should not bar her recovery.

### (3) Tracing of Assets

■ Defendants contend that plaintiff has no case unless she can prove by the preponderance of the evidence that the property on hand in 1951 was on hand when the Wyoming decree was obtained in 1940, or its changes are definitely identified. In view of the invalidity of the Wyoming decree, the date of the Reno decree in 1946 is the date from which the accounting should be made.

■ The evidence reveals that the decedent opened his safety deposit box in San Francisco, January 9, 1943, which was almost four years prior to the divorce procured by plaintiff. He kept in this safety deposit box, or succeeding numbers of the same, at the time of his death, $64,770 in cash, $2,500 Postal Savings Certificates, 20 25-cent War Savings Stamps, and various other documents, right next to the money and currency, which bore dates commencing April 23, 1928, July 21, 1931, July 5, 1935, as well as other dates, prior to the year 1946.

The attorney for defendants read into evidence the actual and specific denominations of cash bills of currency found in the safety deposit box, but did not read a single serial number which would indicate the year and vintage of the bills.

The evidence shows that decedent opened his Pacific National bank account in San Francisco on November 21, 1946, the Anglo California National bank account on December 4, 1941, and another one at the same bank on August 31, 1946. The decedent opened his Bank of America account on June 5, 1943, and his account with Merrill, Lynch, Pierce, Fenner and Beane, on February 8, 1946.

Counsel for the parties herein stipulated, in substance, to the following:

"That between the years 1935 and 1946, Mr. Sidebotham, the decedent, was busy in negotiating deals pertaining to real estate transactions and oil royalties, in which he had an interest, and which numbered approximately seventy in number."

The evidence also shows that the administrator of decedent's estate filed a letter mailed by the U. S. Treasury Department, which determined the decedent's tax liability, insofar as the rec-

ords of that office were concerned. Said Treasury letter indicated that decedent did not file a tax return for the years 1946 through 1950, but that he did file a return for 1951, in the sum of $10,015.06. The administrator corroborated the facts stated in said letter. There is a presumption, of course, that decedent complied with the law, i. e., he did not commit a crime or fraud in failing to file returns in the years 1946 through 1950. Then the conclusion must follow that decedent was living from capital acquired prior to his divorce in 1946, during those years when he did not file such returns. Therefore, all but $10,015.06 of his estate must have been accumulated prior to the year 1946.

With this evidence in the record the court concludes that all of decedent's property, other than $10,015.06 was community property, to which plaintiff has a legal right if she prevails herein.

### (4) The Effect of the Decree Under Section 1080 of the Probate Code

■■ The defendants contend, in effect, that plaintiff's claim has already been adjudicated because she filed a petition for determination of heirship in the Probate Court, and allowed a default to be taken against her.

The record indicates that plaintiff was not sure of the state court's jurisdiction, and that she filed two matters at about the same time. One of the matters was in the Probate Court, and the other was the action now before this court.

The plaintiff contends that after she filed in the Probate Court, she withdrew because of the fact that she was not in privity with the estate, and accordingly said court was without jurisdiction of the subject matter of her claim. In the instant case the plaintiff was not decedent's widow, and at the time of his death was a stranger to the estate. The law of California states that the Probate Court has no jurisdiction to determine adverse claims to the properties of an estate in course of administration

before it when asserted by a stranger to said estate. In re Estate of King, 1926, 199 Cal. 113, 248 P. 519. The court's holding in the case of Schlyen v. Schlyen, 43 Cal.2d 361, 273 P.2d 897, has not changed this general rule. That case decided that matters which the State Superior Court acting in the exercise of its probate jurisdiction may try, can nevertheless be tried in the Superior Court by virtue of its general jurisdiction, by waiver of the parties, but that matters which must be tried in the Superior Court in its general jurisdiction, such as claims of title between the estate and strangers cannot be tried in the Probate Court since the Probate Court is without jurisdiction.

Quoting from 43 Cal.2d at page 373, 273 P.2d at page 903:

"It is certainly true that the court in a probate proceeding is concerned with the settlement of the estate and not with controversies between the estate and strangers, the adjudication of which is the function of the court in the exercise of its general jurisdiction."

The Probate Court did not have jurisdiction to hear plaintiff's claim and therefore she is not precluded from proceeding herein.

### (5) Statute of Limitations; Laches, Estoppel

■ Defendants cite the case of Champion v. Woods, 79 Cal. 17, 21 P. 534, 535, which case precluded the wife's recovery because of laches, as similar to the facts of the instant case, and therefore determinative against plaintiff. The question before the appeals court in Champion v. Woods, supra, was whether the complaint stated facts sufficient to constitute a cause of action. The court stated:

"It is not claimed in the complaint that any misrepresentations were made as to the amount of property which had been acquired during the marriage. They were misrepresentations as to the rights of the parties with respect to the property,—misrepresentations of law."

**902**

This quotation clearly distinguishes the Champion case, as plaintiff in the instant case was wholly unaware that property was being accumulated during the marriage, and decedent had property secreted under many aliases. None of this property was ever brought to the attention of the wife until after the death of decedent.

All of the arguments submitted by counsel for the defendants as to plaintiff's failure to investigate decedent's financial position, when placed in proper perspective, actually constitute arguments in favor of plaintiff. This is so because they forcefully underline the fact of plaintiff's reliance on decedent's misrepresentations.

The plaintiff was not put on inquiry by anything she knew of deceased's wealth, since the evidence revealed there were no indications that he had any, so successful had his concealment been. The husband's deception, which continued up to the time of his death, was concealment of the plaintiff's right of action, against which the Courts of California grant relief, dating from discovery even in cases not involving fiduciary relations. The evidence when considered in its entirety does not show the elements or the presence of estoppel or laches, and does not support the defense of statute of limitations.

In accord with the foregoing it is ordered that the defendants account for all monies, assets, and properties, held for and to the account of the estate of Robert Sidebotham, deceased;

That the sum of $10,015.06 be subtracted from the sum total of said assets, monies and properties; and

It is decreed that plaintiff is the owner and entitled to the possession of an undivided one half of the balance of said assets, monies and properties, constituting the estate of Robert Sidebotham, deceased. The plaintiff shall prepare findings of fact and conclusions of law in accordance with the rule, and the respective parties shall pay their own costs.