[Civ. No. 13502.   Second Dist., Div. Three.   Sept. 3, 1942.]

MARY ELIZABETH PLANTE, Appellant, v. PEARL A. PLANTE et al., Respondents.

Ernest P. Morgan, V. A. Morgan, H. M. Lineman and Mab Copland Lineman for Appellant.

L. H. Phillips for Respondents.

SCHAUER, P. J.—This is one of a group of three actions brought by the plaintiff, the divorced wife of Joseph H. Plante, now deceased, against her successor as the consort of Mr. Plante. In such actions plaintiff has sought respectively, (1) to control disposition of the remains of Mr. Plante, on the theory that his divorce from her was void and that she, and not defendant Pearl A. Plante whom he subsequently married, is the lawful widow; (2) to set aside or to prevent probate of Mr. Plante's last will, on the theory that in executing it he acted under the duress and undue influence of defendant Pearl A. Plante; (3) for declaratory relief and specific performance, *according to plaintiff's construction,* of a contract executed by plaintiff and Mr. Plante at a time when they were living apart, but previous to their divorce. In the (this) action to control disposition of the decedent's remains the Forest Lawn Memorial Park Association is also made a party defendant and in the suit for declaratory relief and specific performance the special administrator of Mr. Plante's estate is joined as a defendant. The three actions were consolidated for trial and in all three judgment was rendered for defendants. It is conceded that there was a total failure of proof of any undue influence in the will contest phase of this litigation and no appeal is prosecuted in that respect, but in the suits seeking control of Mr. Plante's remains and specific performance of the property settlement contract according to plaintiff's interpretation of it, appeals are taken severally but on a single reporter's transcript. We are filing a separate opinion in each appeal but we do not repeat in the opinion in the specific performance case the facts which are set out here, which are brought up in the one transcript, and which are common to all the litigation instituted by plaintiff against the defendant Pearl A. Plante.

The material facts are that plaintiff and Joseph H. Plante intermarried in the year 1904, at San Francisco, California. They moved to Los Angeles in 1925 and in 1933 they separated and entered into the property settlement agreement which is the subject of plaintiff's action for declaration of rights and specific performance. They resumed matrimonial cohabitation for a period but in 1938 again separated and on or about October 9, 1939, Mr. Plante left California and took up his abode at Las Vegas, Nevada. There, on November 22, 1939, he filed suit for divorce and on December 28, 1939, he was awarded a decree from plaintiff on the ground of extreme cruelty. Later, on the same day, he and defendant Pearl A. Plante intermarried at Kingman, Arizona. They came to Los Angeles on January 1, 1940, and from that date until Mr. Plante's death on April 19, 1940, resided in a house in Los Angeles owned by the defendant wife. There was testimony showing that they had intended to sojourn but briefly in California and then proceed to Indianapolis, Indiana, where defendant wife owned other property and had maintained her domicile for many years. Their plans in this regard apparently were cut short by Mr. Plante's death.

Section 7100 of the Health and Safety Code provides that "The right to control the disposition of the remains of a deceased person, unless other directions have been given by the decedent, vests in . . . the following in the order named: (a) The surviving spouse. . . ." It thus appears that this action for control of the remains of Mr. Plante provides a medium by which plaintiff seeks to have it decreed that Mr. Plante's Nevada divorce was void, that his marriage to defendant Pearl A. Plante was likewise void, and that she, the plaintiff, is the surviving spouse, with such burdens and rights as may be incident to such relationship.

The gravamen of plaintiff's charge in her complaint and of her argument upon this appeal is that Mr. Plante's residence in Nevada was but simulated and hence that the Nevada court had no jurisdiction over his matrimonial status. Plaintiff specifically alleged, "That in his verified complaint for divorce above-mentioned, Joseph H. Plante, deceased, alleges that for more than six weeks last past, immediately preceding the filing of this action for divorce, that he had been a bona fide resident of the County of Clark, State of Nevada, and had continuously resided and been physically present and domiciled during all of said period in said County

of Clark. . . ." and also "that the said Joseph H. Plante, deceased, was seen by her [plaintiff] in the City of Los Angeles, State of California, upon three different and separate occasions, during the alleged six week residence in the State of Nevada; that the sole and only purpose for which he went to Nevada to procure a divorce was to circumvent and avoid the laws of the State of California; that said alleged residence in Nevada was never intended to be a bona fide residence." The answer of the defendant wife, for want of information and belief denied plaintiff's allegations relative to seeing Mr. Plante in California during the period alleged and upon the same ground denied that his purpose was to circumvent or avoid the laws of California and that his residence in Nevada was not bona fide. Among the findings of fact made by the trial court are the following:

"2. It is true that during the month of October, 1939, the said Joseph H. Plante, deceased, left the City of Los Angeles, California, and established his residence in Las Vegas, Nevada. It is not true that the said Joseph H. Plante, deceased, could not get a divorce from the plaintiff in California. . . .

"4. It is true that in said verified complaint for divorce the said Joseph H. Plante, deceased, alleged that for more than six (6) weeks last past immediately preceding the filing of his said action for divorce against the plaintiff, Mary Elizabeth Plante, he had been a bona fide resident of the County of Clark, State of Nevada, and had continuously resided and had been physically present and domiciled during all of said period in said County of Clark. . . . It is true that the said decedent, Joseph A. Plante, *did* for more than six (6) weeks immediately preceding the filing of said divorce action against the plaintiff, Mary Elizabeth Plante, *was* a bona fide resident of the County of Clark, State of Nevada, and did continuously reside and was physically present and domiciled during all of said period in the County of Clark, State of Nevada.

"5. It is not true that the said Joseph H. Plante, deceased, was seen by the plaintiff in the City of Los Angeles, State of California, upon three (3) different occasions, or at any occasion, during the six (6) weeks' residence of said Joseph H. Plante, the deceased, in the State of Nevada. It is not true that the sole and only purpose for which the deceased, Joseph H. Plante, went to Nevada was to procure

said divorce or to circumvent and/or avoid the laws of the State of California. It is not true that said alleged residence of Nevada was never intended to be a bona fide residence.''

The fundamental question necessary for us to determine on this appeal is: Does the evidence support the foregoing quoted findings of fact? We are satisfied that it does.

Plaintiff, in her argument that the evidence fails to support the trial court's finding, places great emphasis upon the statements contained in Mr. Plante's ''Affidavit for Marriage License,'' which was a form filled out by him or under his direction in the office of the clerk of the Superior Court of Mohave County, Arizona, on December 28, 1939, following the rendition of the divorce decree earlier that day in Clark County, Nevada. The affidavit, in material part, is as follows: ''Joseph H. Plante, being first duly sworn upon his oath, does declare, depose and certify: That ____Joseph H.____ is

(First name in full)

his true name; that his age is __66 years__; that he is a resident

(Last Birthday)

of __Los Angeles, Los Angeles, California__ that he is of the

(Town, County and State)

__Caucasian__ race; and that he is not related

(Caucasian, Mongolian, Negro, or Indians)

[to] __Pearl A. Cook__ and that he has not been divorced by an

(Name of female)

Arizona court within the past year.''

The reporter's transcript of Mr. Plante's testimony given earlier the same day in the Nevada court shows the following: ''Q. Where do you live, Mr. De La Plant? [The name De La Plant was apparently used interchangeably with Plante.] A. On Second Street in Las Vegas. Q. How long have you been a resident of Las Vegas, Clark County, Nevada? A. Since October, 1939. Q. What date? A. The 11th. Q. Have you been present in the City of Las Vegas, Clark County, Nevada, every day from and including October 11th of this year to and including November 22nd of this year? A. Yes, sir. Q. When you came here, did you come with the intention of making Clark County, Nevada, your permanent place of residence? A. Yes. Q. Have you retained that intention ever since? A. Yes. Q. And you have it now? A. Yes.''

The statements above quoted from the affidavit submitted by Mr. Plante in applying for his marriage license, which seemingly are inconsistent with his divorce suit testimony, likewise above quoted, coupled with the fact that his place of residence in Las Vegas was a rooming house and that he

did not engage in business in that city or, so far as appears, make arrangements to stay there permanently, considered with his personal movements before, during, and after his stay in Nevada, obviously would have supported a finding that his residence there was not bona fide. But the trial court has found to the contrary and such finding is entitled to our support if it has evidentiary support. We are satisfied that it does.

Before going to Nevada Mr. Plante had been living apart from plaintiff because her treatment of him made cohabitation intolerable. That Mr. Plante was the innocent party and that plaintiff here was the offending spouse was amply established. These facts justified Mr. Plante in acquiring a new domicile and constituted, in law, a consent by plaintiff to have her interest in the marriage status determined in the state where her nonoffending spouse was domiciled. (*Delanoy* v. *Delanoy*, (1932) 216 Cal. 27, 38 [13 P. (2d) 719].)

It was established by overwhelming testimony that Mr. Plante was continuously present in Nevada from October 9 or 11 until November 25, 1939, and that plaintiff's assertion that she had seen him in Los Angeles on three occasions during that period was not true. The fact, commented on in plaintiff's brief, that Mr. Plante lived in a rooming house in Las Vegas loses its significance when it is observed that the evidence also shows that Mr. Plante lived in a rooming house in Los Angeles before he went to Las Vegas. Also the fact that he did not engage in business in Nevada is of little importance in view of the further fact that he was not engaged in business in any other state. The assertion is also made in plaintiff's brief that Mr. Plante went to Las Vegas as a "sojourner . . . for a mere forty-five (45) days, the time required to get his divorce started, and without any intention of making Nevada his permanent and fixed home, but only intent upon getting a quick divorce in order to marry again." But the fact is that upon the evidence Mr. Plante had not proposed marriage to defendant Pearl A. Plante at the time he went to Nevada and did not propose to her until subsequent to the establishment of his residence there.

Upon the evidence it is reasonable to infer that the trial court concluded that Mr. Plante told the truth when he testified in the Nevada court as to his intentions with respect to residence. The woman he subsequently married (defendant Pearl A. Plante) was a resident of Indianapolis, Indi-

ana; she owned property there and also in Los Angeles, California; she made a practice of sojourning for a part of each year in California but she maintained her domicile in Indiana. Mr. Plante had an interest in real property in Los Angeles. It was not unnatural or necessarily inconsistent with domicile in Nevada for him to visit the situs of his property between December 3 and December 26, 1939. Likewise, when on December 28, 1939, he found himself to be a bridegroom, it was not unnatural that he should accompany his bride to her periodic dwelling house in Los Angeles, intending also to accompany her a few months later to her place of permanent domicile in Indianapolis. His intentions with respect to making Nevada a place of residence for himself may well have been altered after his marriage.

The statement as to residence in the affidavit for marriage license may or may not have been true. Mr. Plante before going to Nevada had been a resident of California for many years. Perhaps the trial court concluded that Mr. Plante, on December 28, 1939, was an excited and somewhat confused prospective bridegroom, and that he inadvertently filled in the name of the place of his former, instead of that of his present, residence. Mr. Plante could not be present at the trial in this case to defend the woman whom he wed on December 28, 1939, and who apparently gave him the happiness during the latter months of his life which he had been denied previously, but from all the evidence in the record it is reasonable to believe that the trial court concluded that Mr. Plante was confused and mistaken when he gave Los Angeles as his residence in the affidavit for marriage license. Upon that record, and the facts as found by the court, it would seem that either Las Vegas, Nevada, or Indianapolis, Indiana, would have been a more consistent answer to the form question. But questions of consistency and weight of evidence were primarily for the trial court. The statements in the marriage license application certainly do not preclude the finding which the trial court made.

■ It is to be remembered that the Nevada decree, which is regular on its face, is entitled to a presumption of validity. (*Delanoy* v. *Delanoy, supra,* (1932) 216 Cal. 27, 37; *Cardinale* v. *Cardinale,* (1937) 8 Cal. (2d) 762, 767 [68 P. (2d) 351].) It is also not without significance that the plaintiff here was personally served in California with the summons and copy of complaint from the Nevada court. She knew of

the action Mr. Plante was taking; she made no contest to the proceedings; she had in fact informally consented to or approved of his obtaining a divorce. A letter written by her to Mr. Plante reads in part: "Harry, Got your letter, am glad you are away as I am happy without you bot*e*ring me and interfering with the property get your divorce will not contest if you get incom*p*tability and don't try to bring lot of scandal. . . . " The evidence shows that after the property settlement agreement was executed in 1933, by which plaintiff was given the primary right to manage the operation of income property belonging in part to her and in part to Mr. Plante (the interest of each being separate property) she deliberately mismanaged such property and withheld from Mr. Plante income belonging to him. The trial court, in this equitable suit, had a right to consider that all of the facts shown, taken together, tended to negative fraud and establish bona fides on the part of Mr. Plante.

It is held in this state that "a foreign divorce decree is subject to collateral attack upon three recognized jurisdictional grounds, i. e., (1) that it was procured upon a fraudulent domicile or residence; (2) that the laws of the state granting the decree were not complied with, and (3) that the spouse who was domiciled in the foreign state, which was not the matrimonial domicile, and who procured the divorce, was the wrongdoer, whereas the other spouse, a citizen of this state who was neither personally served nor appeared in the foreign action was the innocent party. If any one of these jurisdictional defects is established as a matter of fact, the foreign decree will not be recognized as valid in this state. However, the foreign decree, regular on its face, is entitled to a presumption of validity, and the burden is upon the party attacking it." (*Cardinale* v. *Cardinale, supra*, (1937) 8 Cal. (2d) 762, 766.) Plaintiff here does not claim that she established either of the last two grounds. As to the first the preceding discussion and résumé of evidence make apparent our view that the finding of the trial court is not without legal support.

The judgment is affirmed.

Wood (Parker), J., and Bishop, J. pro tem, concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 29, 1942.