[Civ. No. 15422. Second Dist., Div. Three. Dec. 23, 1946.]

Estate of EVERETT PAUL, Deceased. DOROTHY B. PAUL, as Administratrix, etc., Respondent, v. MARTHA PAUL, as Guardian, etc., Appellant.

Holbrook & Tarr for Appellant.

F. T. Leonetti for Respondent.

KINCAID, J. pro tem.—This appeal is by petitioner Martha Paul, as guardian of Dolores Paul, a minor, from that certain judgment appointing Dorothy B. Paul administratrix of the estate of Everett J. Paul, deceased, and ordering letters of administration to be issued to her.

The undisputed facts are that the decedent, Everett J. Paul, married Martha Paul in 1928 and there are four living minor children the issue of such marriage, Dolores being the eldest. On June 21, 1945, a divorce action was filed in Los Angeles County by Martha against Everett and process therein was served on him June 29, 1945. He owned a one-half interest in the Paul Gear Works in Glendale, California. On July 10, 1945, Martha and Everett, each being represented by legal counsel, entered into a property settlement agreement providing for her and the children's support and for a division of the community property by virtue of which one-half of decedent's interest in the Paul Gear Works was assigned to Martha, each thus retaining a one-fourth share of the whole of such business. Each party to the agreement further, in writing, specifically waived all rights to administer upon the estate of the other after the death of such other. On July 12, 1945, Everett sold his remaining one-fourth interest in his business to Martha and his partner, B. A. Tilton, for a substantial sum which remained due and owing him. .

On the same day, July 12, he left Glendale and went to Reno, Nevada. On August 29, 1945, he filed a complaint for divorce in the District Court of the State of Nevada, in and for the county of Washoe, against Martha as defendant. She, with advice of her counsel, then filed her appearance and waiver in said Nevada action whereby she specifically submitted herself to the jurisdiction of such court, consented to the entry of her default and waived notice of trial and all findings. Trial was thereupon had and a judgment of divorce was rendered by the Nevada court granting him a full and immediate divorce from Martha, the property settlement agreement between the parties being filed with and approved by the court. He thereupon, on the same day, August 29, 1945, in Reno, Nevada, married Dorothy Cathcart, hereinafter referred to as Dorothy Paul, whereupon they immediately left Nevada and went to Sacramento, California, thence returning to Glendale, California. Everett was killed in an automobile accident in Los Angeles County on November 5, 1945.

Dorothy filed her petition for letters of administration in the estate of decedent, written objection to which was filed by Martha as guardian of Dolores, a minor. Issues were raised by such objections collaterally attacking the judgment of divorce of the Nevada court upon the grounds that decedent never established a legal residence in that state but that he proceeded to Reno for the purpose of securing a divorce only, and not for the purpose of establishing himself as a resident of the State of Nevada; that any decree of divorce obtained by him in such state was a fraud upon the courts of both Nevada and California; and that such Nevada court was without jurisdiction to enter the judgment of divorce. Dolores, through her mother, as guardian, then filed a petition for letters of administration in said estate on her own account.

The petitions were ordered consolidated for the purpose of trial and after hearing the evidence the trial judge made his findings, in effect as follows: At the time of the death of decedent he was a resident of Los Angeles County, leaving estate consisting of personal property of the value of about $10,000; he died intestate and Dorothy B. Paul is his surviving spouse and his legal wife, their marriage being in full force and effect at the time of his death; Martha, on July 10, 1945, waived any right to administer upon his estate by virtue of her written property settlement agreement with decedent; he was divorced from Martha in Nevada on August 29, 1945, after she had filed her appearance in said action and submitted herself to the jurisdiction of the Washoe County court. It is not true that the marriage between decedent and Martha was never dissolved, that he was not a bona fide resident of Reno, Nevada, at the time of the divorce, nor that he went to Reno solely for the purpose of securing a divorce. It is further untrue that said decree was granted by virtue of any fraud, or such court was without jurisdiction to grant such decree. It is true that decedent was not engaged in business in California after July 14, 1945, he did not maintain a legal residence in such state, nor retain therein any business interests, clothing, or personal effects, during the period of time that he resided in Reno, Nevada. From these facts the court ordered judgment that Dorothy be appointed administratrix and that letters of administration issue to her in said estate.

Concededly, Martha, having relinquished her right to administer upon the estate of the decedent by virtue of the terms of the property settlement agreement, is not entitled to

letters of administration personally. She may be entitled to them as guardian of and for the eldest child of the decedent if there is no qualified surviving spouse (Prob. Code, § 422). In the absence of an estoppel (see *Elliott* v. *Wohlfrom* (1880), 55 Cal. 384; note IV, 140 A.L.R. 922) such heir is entittled, in this proceeding, to collaterally attack the Nevada judgment. (*Estate of Davis* (1940), 38 Cal.App.2d 579 [101 P.2d 761, 102 P.2d 545].) As was said in the recent case of *Crouch* v. *Crouch* (1946), 28 Cal.2d 243, 249 [169 P.2d 897]: "The rule of decision long followed in this state is that when a foreign divorce decree is relied upon, and the record shows compliance with the foreign law, a presumption of validity arises, and in the absence of a successful attack upon the ground that the foreign court had no jurisdiction, the foreign decree will be recognized here. However, by an equally well settled corollary of the rule, it is always competent to collaterally impeach a decree of divorce rendered in another state by extrinsic evidence showing that the court pronouncing it did not have jurisdiction either of the parties or the subject matter. Thus the decree may always be attacked upon the ground that the foreign court had no jurisdiction because the petitioning party had not established a bona fide domicil." And again (p. 249): "It is a well established rule that jurisdiction to grant a divorce rests upon bona fide domicil. Where neither party is domiciled within the state, no divorce can validly be granted and all proceedings, as well as the judgment, are void. Stated another way, a decree of divorce rendered in one state may be impeached and denied recognition in another upon the ground that neither of the parties had domicil at the divorce forum, and this is true notwithstanding the recital in the decree from the other state of the jurisdictional fact of domicil or residence."

 The principal question now before us for consideration is whether the findings of the court in favor of the bona fides of decedent's residence in Washoe County, Nevada, and of the jurisdiction of the district court of such county and state is supported by the evidence, or, as claimed by appellant, such evidence is so inherently improbable as to be legally incapable of supporting the findings. In measuring the evidence to this question, we deem it proper to keep in mind the rule enunciated by the Supreme Court in *DeYoung* v. *DeYoung* (1946), 27 Cal.2d 521, 524 [165 P.2d 457], that: "The acquisition of a new domicile is generally understood to require an

actual change of residence accompanied by the intention to remain either permanently or for an indefinite time without any fixed or certain purpose to return to the former place of abode. . . . Merely abiding in a place for a definite time for a transient purpose such as obtaining a divorce, unaccompanied by any intention to remain permanently or indefinitely, is not sufficient.''

In support of such findings and judgment there is evidence, in addition to that previously delineated as being undisputed, showing that at the time decedent left Glendale to go to Reno he relinquished his residential hotel room without providing for any return reservation therein or elsewhere in this state. He took all of his personal belongings with him. He told his former partner he was going to look around for a business location out of California and he advised other people that he was entering into business in Reno and would live there. After arriving in Washoe County he telephoned and wrote letters to Dorothy telling her he liked the residential district of Reno, that business possibilities were good and he was looking for a building there. When Dorothy, several days before the divorce date, left California and proceeded to Nevada to join him, she took some of her personal effects and had all of the balance shipped to her there. Martha and the former partner Tilton still owed decedent about $7,000 from the sale of his interest in the gear works business. He wanted this money and he and Dorothy returned to Glendale to collect it because, although he had first planned to write for it, he decided that probably he could get it quicker or better if he went there to collect it himself. He said he then would return to Reno and look at the business possibilities. Decedent and Dorothy left part of their belongings in Reno and some two weeks after their return to Glendale decided to and did have such property sent on to them by express. This evidence, when accepted and believed by the trial judge, supports the findings and meets the requirement that, at the time of the acquisition by decedent of his new domicile in Washoe County, Nevada, he actually changed his place of residence to that location with the intention to remain there either permanently or for an indefinite period and that, at all of the times while so residing there, he was without any fixed or certain purpose to return to his former place of abode. The evidentiary facts relied upon by appellant, together with the inferences in her favor therefrom, merely serve to create a conflict in the evidence and

under such circumstances the court's findings cannot be disturbed. (*Baldwin* v. *Baldwin* (1946), 28 Cal.2d 406, 410 [170 P.2d 670]; *DeYoung* v. *DeYoung, supra,* 27 Cal.2d 521, 525; *Plante* v. *Plante* (1942), 54 Cal.App.2d 318, 322 [128 P.2d 787].)

The judgment appealed from is affirmed.

Desmond, P. J., and Wood, J., concurred.